**William N. HILL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 49A02–9308–CR–453.

Court of Appeals of Indiana, Second District.

Feb. 7, 1995.

Dennis E. Zahn, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

**OPINION**

SULLIVAN, Judge.

William N. Hill (Hill) appeals his conviction of one count of child molesting, deviate

sexual conduct, a class B felony,[1] for which he was sentenced to a presumptive ten year prison term. Hill contends his conviction was in error, stating two grounds for review. We restate the issues as follows:

(1) Did trial court's entry result in an appealable final judgment?

(2) Did sufficient evidence exist to support Hill's conviction of child molesting?

We affirm.

Hill was initially charged, by information, with four counts of child molesting.[2] These charges arose from an incident involving Hill and seven-year-old H.M., the daughter of Hill's girlfriend, Teresa Morphew (Morphew).

After a bench trial upon all four charges, Judge Webster Brewer found Hill guilty of two counts of child molesting; however, at the sentencing hearing, Judge Brewer *sua sponte* set aside the judgment after counsel complained that the judge appeared to be prejudiced against him. After setting aside the original judgment, Judge Brewer stated that, because of Hill's allegations of bias, he would either set the cause for a second trial before Mr. Andrew Fogle (Fogle), or, if counsel felt it necessary, he would grant Hill a change of judge.

Hill chose the former; he did not file a motion for a change of judge. He was then retried upon the two counts of which Judge Brewer had previously found him guilty,[3] with Fogle presiding. There, H.M. testified the two had been residing with Hill while Morphew was separated from her husband. On one evening, H.M. had been watching television with her mother asleep upon the couch, when Hill took her first to the garage, where he urinated in front of her, and then into his bedroom. She stated that Hill then inserted his finger into her vagina, and attempted to coerce H.M. to perform fellatio upon him. At that point, H.M. said her mother came into the room, turning on the light, and H.M. got out of the bed.

Additional testimony came from H.M.'s mother, Morphew, who stated that, on the

occasion H.M. described, she awoke from sleep upon the couch to hear fragments of conversation between H.M. and Hill. In that conversation, H.M. asked, "Does Mommy do this?" and stated, "Well, you'll have to pull your shorts down for that." Record at 129–130. Morphew stated that she then ran into the bedroom and turned the light on, to find Hill and H.M. "scrambling" beneath the covers. Record at 130. She testified that H.M., emerging from the covers a moment later, wore only her night shirt and no underwear.

H.M. testified that the next morning, her mother began asking questions, at which point she told her of the previous night's incident, as well as other similar incidents which had occurred in the short time the two had lived in Hill's house. Morphew then took her to the police, where H.M. gave a statement. The statement was admitted into evidence. In the statement, H.M. described the previous night's incident, stating that she had been watching television with her mother asleep in the room, when Hill had taken her into his bedroom. H.M. stated that Hill had inserted his finger, as well as his penis, into her vagina on that occasion. H.M. also recounted numerous other incidents in which she alleged that Hill had had sex with her. At trial, H.M. did not remember making several of these statements.

The deposition of Dr. Radcliff Jones was also introduced into evidence at Hill's trial. While he did not state conclusively that H.M. had been molested, Dr. Jones did indicate that a physical examination showed a slight reddening of the vulva, which could be caused by "[a]ny form of irritation." Record at 67–7.

Fogle found Hill guilty of only one of the two remaining child molesting charges, and entered judgment accordingly. He then sentenced Hill to a presumptive prison term of ten years. Upon Hill's first appeal of his conviction, this court determined that, while the record referred to Fogle as "special judge," it did not reveal a valid appointment:

---

1. I.C. 35–42–4–3 (Burns Code Ed.1985).

2. All four counts are based upon I.C. 35–42–4–3.

3. The two counts of which Hill was acquitted were not at issue in this second trial.

"Although the record contains some references by a court reporter to the effect that Andrew Fogle was serving as a 'special judge' at the time of trial, the record does not contain any appointment or purported appointment of Andrew Fogle as special judge. Seemingly to the contrary, the record reflects that the Judge's Certificate of the sentencing hearing was signed by Andrew Fogle as judge pro tem, not as special judge.

Because the record reveals that the trial and sentencing was conducted by a person other than a duly qualified judge of the Marion Superior Court, there is no appealable judgment in the matter. *Scruggs v. State*, [ (1993) 2d Dist. Ind.App., 609 N.E.2d 1148].

The purported appeal is hereby dismissed and Hill is ordered released from the custody of the Department of Correction and returned to the custody of the Marion County Sheriff at such time as this decision becomes final and is certified by the Clerk of the Court of Appeals." *Hill v. State* (1993) 2d Dist. Ind.App., 611 N.E.2d 133 (hereinafter, *Hill I* ).

Upon further proceedings in the trial court, a pretrial conference was held before Judge Brewer. In this conference, Judge Brewer again set the cause for trial before "Mr. Fogle," Supplemental Record at 52. The record discloses that a second pretrial conference was then held before Fogle.[4] At that conference, Fogle relied upon his previous findings of fact and sentencing recommendations. Although it appears that neither party knew in what capacity Fogle acted, he stated, without objection from Hill, that the findings of fact and sentencing recommendations would be forwarded to Judge Brewer for his consideration. Again, the court documents for the proceeding before Fogle designated him as "special judge," while the record reveals no such appointment. Supplemental Record at 70.

Thereafter, Judge Brewer presided over Hill's sentencing hearing, over Hill's objection that he had previously disqualified himself, and that the court had therefore lost jurisdiction. Judge Brewer entered judgment against him upon one count of child molesting, with a corresponding prison term of ten years, pursuant to Fogle's recommendation. It is this judgment entry from which Hill appeals.

I. *Judge Brewer's Disqualification and Appointment of "Special Judge"*

■ In this, his second attempt to appeal the child molesting conviction, Hill recognizes that Fogle was not probably appointed a special judge and, therefore, the initial judgment against him was not entered by a "duly appointed judge." However, it is Hill's argument that, in the court's ensuing proceedings, Judge Brewer erroneously entered judgment against him, because Judge Brewer had disqualified himself prior to the second trial. This disqualification, Hill claims, divested Judge Brewer of jurisdiction over the cause and that he could not properly enter judgment without requalifying himself.

Hill argues that Judge Brewer erred because he neither followed the proper procedures to select a new judge after his disqualification, nor did he follow any procedures to re-instate himself. Therefore, Hill claims that any purported judgment by Judge Brewer was void. Further, Hill argues that Fogle could not have entered a valid judgment against him had he acted as master commissioner in the second trial, because his authority was dependent upon a valid delegation of Judge Brewer's jurisdiction.

The State contends that Judge Brewer retained jurisdiction over Hill's case because he never actually disqualified himself; he merely vacated the judgment of the first trial due to counsel's complaints of prejudice, and set the case for retrial before Fogle. In support of this contention, the State points out that Hill never moved for a change of

---

4. From counsel's conversation with Fogle in the second pre-trial conference, it appears that Judge Brewer interpreted this court's previous disposition as one requiring a new trial for Hill. However, this misconception was later clarified to require only that a judgment be entered against Hill by a duly qualified judge. The record shows that Fogle did not enter judgment at the second pre-trial, but instead returned his previous findings to Judge Brewer in order that Judge Brewer could enter judgment.

judge, which he was given an option to do, and that the parties explicitly agreed that Fogle would try the case. Further, the State argues that even had Judge Brewer disqualified himself, his actions were *sua sponte,* by which he could, and did, properly resume jurisdiction. Thus, the State concludes that, though this court determined that Fogle was not duly appointed as special judge, he could, as yet, properly act as master commissioner, with Judge Brewer approving his findings.

The record discloses the following colloquy, which occurred prior to Hill's second trial:

"*THE COURT:* No, no, wait a minute, wait ... you and your client are obviously in the same position. So what we are going to do, Mr. Zahn, is we are going to give you a new trial, and we are going to set aside the verdict [sic], because you seem to be drinking out of the same cup that your client is drinking out of, that you have been someway [sic] mistreated. That ... that offends my sense of fairness. What we are going to do is, we are going to sit [sic] aside the verdict [sic] and we will give you a new trial, and we will set it down before Mr. Fogle or give you a change of judge, either one ... because you seemed to came [sic] in here with a bad attitude, and you are putting it all on the Court ... okay ... and I work very hard at being fair. But, apparently ... that's not translated to you, and so what we are going to do is we are setting aside this; and, why don't you look at ... your calendar, and pick a Thursday that we can retry this case[.]

\*    \*    \*    \*    \*    \*

*THE COURT:* [T]he 30th of January. Now if in the interim you decide that I am also stacking the deck against you with Mr. Fogle, and you move for a change of judge, to show you what a sport I am, I will give you a change of judge ... if you choose not to try it before Mr. Fogle." Supplemental Record at 44-46.

Contrary to the State's argument, there is no doubt that Judge Brewer disqualified himself from Hill's case. And, because Hill's counsel had suggested that he was biased, Judge Brewer took the correct judicial action in appointing Fogle special judge to re-try Hill. It is equally evident that Judge Brewer did not act to requalify himself. Though it may have been error for Judge Brewer to enter the judgment subsequent to his prior disqualification,[5] we are persuaded that it would be an exercise in futility to remand at this juncture.

■  Pursuant to the law enunciated at the time we decided *Hill I,* there was no valid appointment of Fogle as Special Judge. However, since our disposition of *Hill I,* the law has been re-examined by our Supreme Court. *See Floyd v. State* (1994) Ind., 650 N.E.2d 28. The law now considers the entry of judgment by a special judge who has been appointed through inadequate or defective procedures to be valid where the parties have not properly objected at trial. That judge's exercise of power is valid *de facto* under the color of authority, rather than *de jure.* 650 N.E.2d at 32.

Though the proper procedures for his appointment were not followed, our examination of the record reveals that Judge Brewer did attempt to appoint Fogle special judge. Thus, although this case presents an unusual factual situation, under present law, Judge Brewer's attempt to appoint Fogle special judge is action by a qualified judge which constitutes an improper or irregular appointment. *See Powell v. State* (1981) Ind., 440 N.E.2d 1114, 1117. Since both parties agreed that Fogle would serve as special judge, Hill's agreement with the State that Fogle should preside is sufficient to waive any objection he might have had to the defective appointment, and to validate Fogle's ac-

---

**5.** It is important to point out that Judge Brewer followed the implicit holding of *Hill I,* to wit: taking the case, entering judgment, and holding a sentencing hearing. This court was not apprised that Judge Brewer had disqualified himself until the Supplemental Record of Proceedings was filed on October 7, 1993, almost seven months after we dismissed the previous action for want of a final appealable judgment.

tions as a *de facto* judicial officer. *See Floyd, supra,* 650 N.E.2d at 32–33.

Consequently, there is no reason to set aside Hill's conviction of one count of child molesting and its corresponding ten-year sentence. Should this court remand for further proceedings, the outcome would not differ in the slightest respect—either judge would consider Fogle's findings of fact and sentencing recommendations appropriate. Hill has therefore demonstrated no prejudice accruing to him, and no cause for reversal exists.

## II. *Sufficiency of the Evidence*

■ Hill next claims that, even had the judgment been properly entered, insufficient evidence exists to support his conviction. Focusing upon numerous differences between H.M.'s testimony before Fogle and her statement to police soon after the incident occurred, Hill alleges that H.M.'s testimony was so inherently inconsistent and improbable as to be of incredible dubiosity. He also cites a lack of sufficient medical testimony to support H.M.'s trial testimony, arguing that the doctor who examined H.M. did not testify at trial that she had been molested.

■ After examining both the trial transcripts and H.M.'s statement to police and deposition, there is no doubt that her testimony, as a whole, was inconsistent. However, mere inconsistencies do not necessarily dictate reversal. *Banks v. State* (1991) Ind., 567 N.E.2d 1126; *Scott v. State* (1981) Ind., 426 N.E.2d 1298. This court will only overturn a conviction if the trial court was "confronted with inherently improbable testimony, or equivocal, wholly uncorroborated testimony of incredible dubiosity." *Becker v. State* (1992) 1st Dist. Ind.App., 585 N.E.2d 279, 281, *citing Bedwell v. State* (1985) Ind., 481 N.E.2d 1090. Here, the events as described by H.M. were neither uncorroborated, nor inherently improbable.

In order to convict him, the State was required to prove that Hill:

"[O]n or about MAY 1, 1991 TO MAY 9, 1991, did perform or submit to deviate sexual conduct by INSERTING HIS FINGER into the SEX ORGAN of [H.M.], a child who was then under the age of twelve (12) years, that is: SEVEN (7) years of age[.]" Record at 11.

At trial, not only did H.M. state unequivocally that Hill had used his finger to penetrate her vagina on one specific occasion, she accurately recalled several minute details of the events which occurred that night. She specifically remembered, both at trial and in her police statement, that her mother had fallen asleep on the couch at the time Hill took her into his bedroom. H.M. also distinctly recalled at trial that her mother had walked in on them, and had turned the light on. Her testimony concerning the events upon which Hill's conviction was based varied very little. There was nothing inherently improbable or incredibly dubious about her testimony. *See Beckham v. State* (1988) Ind., 531 N.E.2d 475, 476 (upholding conviction based solely upon testimony of seven-year-old who stated that babysitter had perpetrated bizarre acts of abuse).

It is true that, during cross-examination, H.M. denied making quite a few statements which were contained in her statement to police, as well as her deposition. However, in his cross-examination, Hill's counsel clearly demonstrated H.M.'s confusion and the numerous inconsistencies in her testimony. It is not surprising that a young child in an adversary courtroom setting may demonstrate a degree of confusion and inconsistency. *See Lowe v. State* (1989) Ind., 534 N.E.2d 1099, 1100. It was well within the province of the trial court to take into account any inconsistencies between H.M.'s prior statements and her trial testimony in assessing credibility. *Bixler v. State* (1989) Ind., 537 N.E.2d 21, 25, *reh'g denied; see also Tague v. State* (1989) Ind., 539 N.E.2d 480, 482 ("Conflicts in the victim's testimony, stemming from fear, naivete, or embarrassment, are clearly for the jury to determine.").

Additionally, we point out that H.M.'s testimony was hardly uncorroborated. Indeed, Morphew, who was the only other person present when the incident occurred, testified that she had heard snippets of conversation supporting H.M.'s version of the incident, and that she had personally observed Hill and H.M. in his bed together, with H.M.

partially unclothed. This lends support to H.M.'s testimony.

As to Hill's contention that a lack of conclusive medical testimony renders H.M.'s testimony insufficient, we observe that Dr. Radcliff Jones stated that the findings of his examination of H.M. could "go either way." Record at 67–7. That the examining physician did not state with a degree of certainty that H.M. had been the subject of sexual molestation is of no consequence in this sufficiency determination. We decline Hill's invitation to reweigh the evidence, or to require the State to produce conclusive corroborating medical testimony in all future child molestation cases.

Thus, sufficient evidence existed upon each and every element of the charge.

The judgment is affirmed.

FRIEDLANDER and BAKER, JJ., concur.