**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 15 2014, 7:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN F. HURLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J. E., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1312-JV-1053 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Jennifer Hubartt, Magistrate
Cause No. 49D09-1305-JD-1170

**August 15, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, J.E., appeals the juvenile court's adjudication of delinquency based on true findings that he committed two Counts of child molesting, Ind. Code § 35-42-4-3, offenses that would be Class B felonies if committed by an adult.

We affirm.

## ISSUE

J.E. raises two issues on appeal, one of which we find dispositive and restate as follows: Whether the State presented sufficient evidence to sustain the juvenile court's true findings for two Counts of child molesting, which would be Class B felonies if committed by an adult.

## FACTS AND PROCEDURAL HISTORY

R.E. was born on February 23, 2007, and lives with his mother (Mother) and his two sisters who were then age eight and fourteen. J.E., who was fourteen years old at the time of the incident, lived with his parents, and his two sisters, aged eleven and thirteen. J.E. is a brother to Mother, therefore, an uncle to R.E. On New Year's Eve, 2012, Mother, R.E., and R.E.'s two sisters attended an evening church service where they met with J.E., J.E.'s parents who were also R.E.'s grandparents (Grandparents), and J.E.'s two sisters. After the church service, Grandparents took R.E. and R.E's sisters back to their home. They arrived shortly before midnight. Grandmother made snacks for the New Year's celebration as the children played and watched television in the living room.

At around 12:30 a.m., Grandfather retired to bed, followed by Grandmother at around 1:00 a.m. As she was going to bed, Grandmother saw R.E. and R.E.'s sisters playing in J.E.'s bedroom. The rest of the children were in the living room playing cards, talking, and watching television. The following day, at around 3:00 p.m., Grandparents left the house to go to Red Lobster for lunch. They left all six children at home and instructed them to clean the house if they wanted to use their gift cards for dinner at Chili's. While Grandparents were away, the children cleaned the house, watched television, and J.E and J.E.'s sisters changed their clothes. R.E. and his sisters did not change, since they did not have a change of clothes. Around 6:30 p.m., Grandparents returned home and found that the children were ready and dressed for dinner. All of the children except for R.E., had gift cards, and because R.E. did not have a gift card, Grandparents dropped him off at his home before going to Chili's.

Sometime in mid-January 2013, R.E.'s eight-year-old sister reported to Mother that R.E. had told her that J.E. had done "nasty things" to him. (Transcript p. 73). Mother then questioned R.E. as to what *nasty things* he was talking about. At first, R.E. was reluctant, but he eventually told Mother that while he was at Grandparent's house, he was in J.E.'s bedroom "playing a videogame" with J.E., and that J.E. had sucked R.E.'s penis, and had "put his penis" inside R.E.'s "bottom." (Tr. p. 14). To establish the truthfulness of R.E.'s allegations, Mother called Grandfather, and he agreed to meet her at her home. When he arrived, they met in the parking lot and talked inside the car, and Grandfather assured Mother that he would conduct his own investigation. The following day, Mother followed

3

up the issue with Grandfather, but Grandfather dismissed her allegations claiming that "nobody saw anything when they were at the house." (Tr. p. 17). Since nothing came out of that, Mother consulted her pastor who then gave her a contact number to a psychologist. Consequently, Mother scheduled an appointment with the psychologist where she shared R.E.'s story but before the session could go any further, the psychologist informed Mother that he was bound by law to report any cases of child molestation. At that point, the psychologist placed the call to the Department of Child Services (DCS) as Mother was in the room, and he reported the incident. DCS later linked Mother with the Child Advocacy Center in Indianapolis.

On February 12, 2013, Lanette Wheeler (Wheeler), a child forensic interviewer with the Child Advocacy Center, interviewed R.E. During the videotaped forensic interview, Wheeler showed R.E. drawings of the front and back sides of a boy and girl and asked R.E. to tick the body parts which he referred to as private parts. R.E. pointed to the boys' genitalia, which he called the "penis," and the buttocks as the "behind." (State's Exh. 1). R.E. stated that J.E. had pulled down his pants and underwear before he "sucked [R.E.'s] penis." (State's Exh. 1). R.E. also stated that J.E. "spit on his penis" before inserting it in [R.E.'s] "bottom." (State's Exh. 1). R.E. also informed Wheeler that he had told J.E. to "stop because it hurt." (State's Exh. 1). R.E. further stated that J.E. asked him "not to tell anyone or he would get mad." (State's Exh. 1).

On May 8, 2013, the State filed a petition alleging that J.E. was a delinquent child based on three acts of child molesting, two of which would be Class B felonies, Ind. Code

4

§ 35-42-4-3; and one of which would be a Class C felony, I.C. § 35-42-4-3(b), if committed by an adult. On September 26, 2013, the juvenile court held a hearsay hearing where Mother testified, and the juvenile court also found R.E. to be a competent witness. A denial hearing was held on October 17, 2013, to determine whether J.E. was delinquent for child molesting. At the beginning of the hearing, the juvenile court took judicial notice that R.E. was a competent witness and it incorporated Mother's hearsay testimony as well as the videotaped forensic interview. In addition, R.E. testified stating that J.E. had touched his private parts by sucking his penis, and that J.E. had tried to penetrate his bottom using his penis. According to R.E., the molestation occurred on New Year's Eve while playing a videogame in J.E.'s bedroom, and that a similar thing happened the next day while Grandparents were away. At the end of the hearing, the juvenile court found the child molesting allegations to be true. On November 21, 2013, the juvenile court held a dispositional hearing and ordered that J.E. be placed on probation with some of the following conditions: that he completes a home-based sexual offender treatment, have no contact with R.E., and only have supervised contact with any child under the age of twelve. The juvenile court also issued a parental participation order where Grandfather was to: ensure that J.E. complied with all the terms of his probation, accompany J.E. to all appointments, know J.E.'s whereabouts at all times, and set a curfew for him.

J.E. now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

J.E. argues that the evidence was insufficient to support his adjudications for two Counts of child molesting, Class B felonies, if committed by an adult.

The standard of review for a juvenile adjudication is the same as if the crime had been committed by an adult. *D.D. v. State*, 668 N.E.2d 1250, 1252 (Ind. Ct. App. 1996). On review, we will not reweigh the evidence or judge the credibility of the witnesses. *D.B. v. State*, 842 N.E.2d 399, 401-02 (Ind. Ct. App. 2006). Rather, we look to the evidence and the reasonable inferences therefrom that support the true finding. *Id.* We will affirm the adjudication if evidence of probative value exists from which the fact finder could find the juvenile guilty beyond a reasonable doubt. *Id.* Evidence is insufficient to convict only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *Bradford v. State*, 675 N.E.2d 296, 298 (Ind. 1996); *D.B.*, 842 N.E.2d at 401-02.

J.E. first argues that "there were several discrepancies" in R.E.'s testimony. (Appellant's Br. p. 7). We find this to be an invitation to judge the credibility of a witness and reweigh the evidence. This is not our role as an appellate court. *See D.B.*, 842 N.E.2d at 401-02. In fact, it is well settled that the testimony of a child victim, even if uncorroborated, is ordinarily sufficient to sustain a conviction for child molesting. *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind. 2000). And to the extent that there were any inconsistencies in R.E.'s testimony, we have observed before that it is "not surprising that a young child in an adversary courtroom setting may demonstrate a degree of confusion and inconsistency." *Hill v. State*, 646 N.E.2d 374, 378 (Ind. Ct. App. 1995). Although we note that there were some slight variations in R.E.'s testimony regarding the precise date,

how many times it happened, and how it made him feel, he did not waiver about the fact that J.E. molested him.

Next, J.E. claims that the evidence was still insufficient to prove that he committed two separate acts of child molesting. We disagree. When the State seeks to have a juvenile adjudicated a delinquent, it must prove every element of the offense beyond a reasonable doubt. *D.B.*, 842 N.E.2d at 401. To prove that J.E. committed acts that would be Class B felonies child molesting, if committed by an adult, the State was required to prove that J.E. did, with a child under fourteen years of age, performed or submitted to deviate sexual conduct. *See* I.C. § 35-42-4-3(a). "Deviate sexual conduct" is an act involving the sex organ of one person and the mouth or anus of another person. Ind. Code § 35-41-1-9.

Count I of the delinquency petition alleged that J.E. committed what would be Class B felony child molesting if committed by an adult, by performing or submitting an act involving his mouth and R.E.'s penis. Count II alleged that J.E. committed what would be Class B felony child molesting, if committed by an adult, by performing or submitting to an act involving his penis and R.E.'s anus.

Turning to Count I, R.E. testified at the denial hearing that while playing a videogame in J.E.'s bedroom, J.E. "paused the game [,] [] pulled down [R.E's] pants [,] and sucked [R.E.'s] private parts." (Tr. p. 52). R.E. had earlier clarified that his private parts were his "penis and butt." (Tr. p. 52). R.E. also testified that the door was locked and no one else was in the room; however, his sisters and J.E.'s sisters were in the house. At the denial hearing, one of J.E's sister testified that she was in the house on New Year's

7

Eve and on New Year's Day and that she did not witness any molestation. The fact that J.E.'s sister did not witness the molestation does not mean it did not occur. The same is true regarding J.E.'s contention that the molestation occurred in a house where "five to eight people" were present. (Appellant's Br. p. 8). While it is unfortunate that child molestation still occurs even where other persons are present, such occurrences do not run counter to human experience. *See Altes v. State*, 822 N.E.2d 1116, 1122 (Ind. Ct. App. 2005) (where the defendant molested the victim despite the fact that other children in the house), *trans. denied*; *Barber v. State*, 870 N.E. 2d 486, 494 (Ind. Ct. App. 2005). (where the defendant took the victim to the back of the classroom and molested her while other students were watching a film in the same classroom), *trans. denied*. Based on the evidence presented at trial, we find that the juvenile court could have drawn a reasonable inference that J.E. put R.E.'s penis in his mouth. Therefore, we find that evidence was sufficient to sustain the finding that J.E.'s committed an act what would be a Class B felony child molesting, if committed by an adult.

As for Count II, R.E. testified that J.E. "put his penis in [R.E.'s] behind." (Tr. p. 53). J.E. argues that the evidence was insufficient to establish that he performed deviate sexual conduct because "there was no evidence of contact with R.E.'s anus other than" R.E.'s above statement. (Appellant's Br. p. 10).

Although evidence of penetration of a child's anus by a defendant's penis will establish deviate sexual conduct, the State is not required to introduce evidence of penetration. *Wisneskey v. State*, 736 N.E.2d 763, 764 (Ind. Ct. App. 2000). Instead, the

State is required only to establish that the defendant "committed a sex act with his penis involving the child's anus." *Id*. Our supreme court has noted that in child molestation cases a detailed anatomical description by the victim is unnecessary and undesirable. *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996). The court reasoned that many people are unable to precisely describe anatomical features, and further, that such a requirement would subject victims to unwarranted questioning and cross-examination. *Id*. Thus, despite a child's unfamiliarity with anatomical terms and his limited sexual vocabulary, a conviction for child molesting may rest solely upon the child's uncorroborated testimony. *Wisneskey*, 736 N.E.2d at 765.

J.E. cites *Downey v. State*, 726 N.E.2d 794, 797 (Ind. Ct. App. 2000), *trans. denied,* in support of his contention that the State failed to prove that J.E.'s penis touched R.E.'s anus. In *Downey*, the victim testified that Downey had rubbed his penis up and down between her "butt cheeks." *Id*. A police detective and child sexual abuse counselor testified that Downey admitted that he had rubbed his penis between the child's "butt cheeks" and was "humping" her, but that he did not penetrate her. *Id*. Because there was no explicit evidence of contact with the anus, this court concluded that there was insufficient evidence to convict Downey of child molesting.

We find the instant facts inapposite from *Downey*. Here, the State was only required to establish that J.E. committed a sex act with his penis involving R.E.'s anus and not required to introduce evidence of penetration. *See Wisneskey*, 736 N.E.2d at 764. However, our viewing of the videotaped forensic interview discloses that R.E.'s statements

9

were more specific than J.E.'s interpretations that there was no evidence of contact with R.E.'s anus. Indeed, the videotape reveals the following dialogue between Wheeler and R.E.:

> Q: Was it inside of your butt or outside your butt?
> A: Well it was inside and it hurt and I cried.

(State's Exh. 1). As we held in *Wisneskey*, 736 N.E.2d at 765, the fact-finder can infer that pain is the result of contact between the defendant's penis and the anus. Moreover, R.E. testified at the denial hearing that J.E. put his penis in R.E.'s behind. In this regard, we find that the evidence here was sufficient to allow an inference beyond a reasonable doubt that J.E. committed child molesting by causing his penis to make contact with R.E.'s anus.

In sum, we find that the evidence presented was sufficient to sustain true findings for child molesting. As such, we conclude that State proved every element of the offenses beyond a reasonable doubt. *See D.B.*, 842 N.E.2d at 401.

## CONCLUSION

In light of the foregoing, we find that the State presented sufficient evidence to support the juvenile court's determination that J.E. is a delinquent child for committing acts that would constitute Class B felonies child molesting, if committed by an adult.

Affirmed.

MATHIAS, J. and CRONE, J. concur