v.

STATE of Indiana, Appellee–Petitioner.

No. 49A02–0506–JV–514.

Court of Appeals of Indiana.

Feb. 13, 2006.

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Sixteen-year-old D.B. appeals his adjudications of rape and child molesting. D.B. raises four restated issues:

1. Whether the evidence is sufficient to support true findings of rape and child molesting;

2. Whether his adjudications of rape and child molesting subjected him to double jeopardy;

3. Whether the juvenile court abused its discretion by committing D.B. to the Department of Correction instead of a less restrictive alternative; and,

4. Whether the juvenile court abused its discretion in not crediting D.B. for time he spent in detention prior to his adjudication and dispositional hearing.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

In March of 2004, twelve-year-old A.B. and her younger sister S.B. spent the night at their grandmother's house trailer. Their mother's half brother D.B., who was fifteen at the time, also lived in the trailer.

That night A.B. slept on the couch in the living room. During the night, A.B. woke to find D.B. on top of her. D.B. kissed her. A.B. told D.B. "no" and tried to "nudge" D.B. off her by pushing with her arm. (Tr. at 10.) D.B. pulled A.B.'s underwear down, inserted his penis into her vagina and had sexual intercourse with her. D.B. then returned to his room while A.B. cried herself to sleep. A.B. did not tell anyone about the incident at that time.

A.B. became pregnant as a result. At her annual check-up, A.B. told her mother she was five months pregnant. A.B. initially told her mother someone else was the father, but eventually told her mother D.B. had raped her.

In December 2004, D.B. was taken into custody and detained after a hearing. He was charged with rape[1] and child molesting,[2] both Class B felonies when committed by an adult. In March 2005, the juvenile court entered a true finding on both counts. In April 2005, after a dispositional hearing, the juvenile court ordered D.B. placed in the Department of Correction until his eighteenth[3] birthday, undergo individual counseling, participate in a sexual offender program, and continue his education.

## DISCUSSION AND DECISION

1. *Sufficiency of the Evidence*

D.B. argues the evidence was insufficient for the juvenile court to enter true findings for rape and child molesting.

██ When the State seeks to have a juvenile adjudicated a delinquent, it must prove every element of the offense beyond a reasonable doubt. *C.T.S. v. State*, 781 N.E.2d 1193, 1200–01 (Ind.Ct.App.2003), *trans. denied* 792 N.E.2d 45 (Ind.2003). On review, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1201. Rather, we look to the evidence and the reasonable inferences therefrom that support the true finding. *Id.* We will affirm the adjudication if evidence of probative value exists from which the factfinder could find the juvenile guilty

1. Ind.Code § 35–42–4–1.

2. Ind.Code § 35–42–4–3.

3. As the State points out in its brief, the Dispositional Order is unclear as to whether D.B. is to be detained until his 21st birthday or his 18th birthday. However, the transcript of the dispositional hearing indicates the juvenile court intended D.B. to remain "in the Department of Corrections [sic] until [his] 18th birthday that is ... 17 months." (Tr. at 119.) When there is a discrepancy between the oral sentencing order and the written sentencing order, our Indiana Supreme Court has indicated the oral language governs, particularly when the oral language is clear. *See, e.g., Whatley v. State*, 685 N.E.2d 48 (Ind. 1997); *Marshall v. State*, 621 N.E.2d 308 (Ind.1993).

beyond a reasonable doubt. *Id.* In other words, we will affirm the finding of delinquency unless it may be concluded that no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

### A. *Child molesting*

■ With respect to the child molesting charge, D.B. argues A.B. lacks credibility because she admitted lying to her mother about the incident, she admitted she sometimes has a problem telling the truth, she lacked signs of distress after the incident, and she did not confide in anyone about the incident. He notes A.B. stated in her deposition that her sister was also sleeping in the living room, but at the hearing she testified S.B. was sleeping in her grandmother's bedroom.

D.B.'s argument is an invitation for this court to reweigh the evidence, which we decline. We remind D.B. that "it is the function of the trier of fact to resolve conflicts in testimony and to determine the weight of the evidence and the credibility of the witnesses." *Id.* (quoting *K.D. v. State,* 754 N.E.2d 36, 38 (Ind.Ct.App. 2001)).

The charging information for child molesting alleges D.B. "did perform or submit to sexual intercourse with [A.B.], a child who was then under the age of fourteen (14) years, that is: 12 (twelve) years old." (App. at 16.)

A.B. testified she was born on March 16, 1991 and the incident occurred in March 2004 when she was staying overnight at her grandmother's home.[4] She testified she was asleep on the couch but woke up when "[D.B.] came on top of me." (Tr. at 9.) She explained D.B. "had his leg over me, like almost sitting on me but not really." (*Id.* at 10.) She recognized D.B., who was her uncle. D.B. kissed her. D.B. then removed A.B.'s underwear, stuck his penis into her vagina, and "was pushing." (*Id.* at 12.) This evidence is sufficient to sustain a true finding for child molesting.

### B. *Rape*

■ With respect to the rape charge, D.B. argues "there was no evidence of force or imminent threat of force." (Br. of Appellant at 8.) He notes: "As uncomfortable as it may be to think in terms of consensual sexual encounters between children, ... consent is a defense and the evidence strongly suggests the sexual encounter was consensual." (*Id.*)

The charging information for rape alleges D.B. "did knowingly or intentionally have sexual intercourse with [A.B.], a member of the opposite sex, when [A.B.] was compelled by force or the imminent threat of force." (App. at 16.)

In considering the rape statute, our Indiana Supreme Court has stated:

> [I]t is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question. The issue is thus whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance.

*Tobias v. State,* 666 N.E.2d 68, 72 (Ind. 1996).

---

**4.** The date of the incident is unclear. The charging information for child molesting indicates the incident occurred on or between March 1 and March 31, 2004. The charging information for the rape indicates the incident occurred on or about March 15, 2004. Although it is not clear whether A.B. was twelve or thirteen at the time, she was under fourteen as required by the child molesting statute.

A.B. testified she was asleep on the couch and woke up when D.B. sat on her. After D.B. kissed her, she said no and tried to "nudge" him off her. (Tr. at 10.) When asked if she was "able to move at all" because D.B. was sitting on her, A.B. replied, "No the couch was [sic] really that big." (*Id.* at 11.) She agreed D.B. is "much bigger" than she is and that "part of or the reason that [she] couldn't move or stop him from doing this is because his weight was on top of [her]." (*Id.* at 73.)

She testified D.B. did not say anything to her during the encounter or put his hand on her mouth to prevent her from calling out to her grandmother in the next room. However, she also testified:

> Q. Now as this event was occurring, what if any attempts did you make to say anything to anyone?
>
> A. I didn't.
>
> Q. And why didn't you say anything at that time?
>
> A. I was to[o] scared.
>
> Q. *What were you afraid of?*
>
> A. *That he would do something.*
>
> Q. What did, when you say do something (inaudible).
>
> A. *Hit me or something [sic] bad happen.*

(*Id.* at 13–14.)

From this testimony, a factfinder could have concluded A.B. perceived D.B. was compelling her compliance by force or an imminent threat of force. Accordingly, we hold the evidence was sufficient to support a true finding of rape.

### 2. *Double Jeopardy*

■ D.B. argues his adjudications for rape and child molesting violate the protections against double jeopardy in Article I, Section 14 of the Indiana Constitution.[5]

D.B. asserts he is being punished twice for a single act of nonconsensual sexual intercourse. The State notes there is only a single disposition based on all true findings in a juvenile adjudication, as opposed to separate sentences for separate convictions D.B. might have faced in the adult criminal system. Therefore, the State argues, D.B. was not subjected to multiple punishments and "double jeopardy concerns . . . are simply not implicated." (Br. of Appellee at 6.)

We decline the State's apparent invitation to hold a juvenile adjudication can never implicate double jeopardy. *Cf. Breed v. Jones*, 421 U.S. 519, 531, 95 S.Ct. 1779, 44 L.Ed.2d 346 ("Jeopardy attached . . . when the Juvenile Court, as the trier of facts, began to hear evidence.") (discussing double jeopardy under Fifth Amendment in successive juvenile and adult proceedings for same offense).

Our Indiana Supreme Court thoroughly analyzed the double jeopardy protections afforded in the Indiana Constitution in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), and concluded:

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Id.* at 49.

■ The objective of the statutory elements test is to "determine whether the essential elements of separate crimes charged could be established hypothetically." *Id.* at 50. Each offense must include at least one essential element the other

---

5. Art. I, § 14 provides: "No person shall be

put in jeopardy twice for the same offense."

offense does not. Under the statutory elements test, rape and child molesting are separate offenses: rape requires proof of force while child molesting requires proof of age.

The second consideration in our state double jeopardy analysis is the actual evidence test. "Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." *Id.* at 53. To succeed under this test, D.B. must demonstrate "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.*

Because the gravamen of both offenses is nonconsensual sexual intercourse, a conviction and sentence for rape and child molesting based a single act has been held to violate principles of double jeopardy. *See, e.g., Kizer v. State,* 488 N.E.2d 704 (Ind.1986); *Roberts v. State,* 712 N.E.2d 23 (Ind.Ct.App.1999), *trans. denied* 726 N.E.2d 302 (Ind.1999). As A.B. testified to only one instance of nonconsensual sexual intercourse with D.B., there is a "reasonable possibility" the juvenile court used this fact to establish the essential elements of both rape and child molesting. *Richardson,* 717 N.E.2d at 53.

"When two convictions are found to contravene the double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated." *Id.* at 54 (internal citations omitted). The reviewing court will make this determination itself, "being mindful of the penal consequences that the trial court found appropriate." *Id.*

Accordingly, we vacate D.B.'s true finding of child molesting. In considering which true finding to vacate, we note the juvenile court found it appropriate to commit D.B. to the Department of Correction. The juvenile court may "order wardship of the child to the department of correction for a fixed period that is not longer than the date the child becomes eighteen" if the child is between the ages of thirteen and sixteen, and has committed an offense which, if committed by an adult, would be murder, kidnapping, rape, criminal deviate conduct, armed robbery or robbery resulting in bodily injury or serious bodily injury. Ind.Code § 31–37–19–9. Vacating the true finding of child molesting allows the court's commitment of D.B. to the Department of Correction to stand.

### 3. *Disposition/Least Restrictive Alternative*

D.B. argues the juvenile court abused its discretion by placing him in the Department of Correction instead of in an available secure treatment facility for adolescent males. Specifically, D.B. argues the disposition "does not support family life or promote rehabilitation, it violates statutory restrictions that the least restrictive alternative be imposed, and conflicts with the rehabilitation goals of the juvenile code." (Br. of Appellant at 11.)

The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the discretion of the juvenile court and will be reversed if there has been an abuse of that discretion. *C.C. v. State,* 831 N.E.2d 215, 216 (Ind.Ct.App.2005). The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.* An abuse of

discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 217.

Ind.Code § 31–10–2–1 explains the policy and purpose of the juvenile code:

It is the policy of this state and the purpose of this title to:

(1) recognize the importance of family and children in our society;

(2) recognize the responsibility of the state to enhance the viability of children and family in our society;

(3) acknowledge the responsibility each person owes to the other;

(4) strengthen family life by assisting parents to fulfill their parental obligations;

(5) *ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation;*

(6) remove children from families only when it is in the child's best interest or in the best interest of public safety;

(7) provide for adoption as a viable permanency plan for children who are adjudicated children in need of services;

(8) *provide a juvenile justice system that protects the public by enforcing the legal obligations that children have to society and society has to children;*

(9) use diversionary programs when appropriate;

(10) *provide a judicial procedure that:*

(A) ensures fair hearings;

(B) recognizes and enforces the legal rights of children and their parents; and

(C) *recognizes and enforces the accountability of children and parents;*

(11) *promote public safety and individual accountability by the imposition of appropriate sanctions;* and

(12) provide a continuum of services developed in a cooperative effort by local governments and the state.

(emphases supplied.) Ind.Code § 31–37–18–6 delineates the factors the juvenile court must consider in making a juvenile disposition:

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:

(1) is:

(A) *in the least restrictive (most family like) and most appropriate setting available;* and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

(emphases supplied.)

We have previously noted this section requires the juvenile court to select the least restrictive placement in most situations. *K.A. v. State,* 775 N.E.2d 382, 386 (Ind.Ct.App.2002), *trans. denied sub nom Almay v. State,* 783 N.E.2d 704 (Ind.2002). "However, the statute contains language which reveals that under certain circumstances a more restrictive placement might be appropriate." *Id.* at 386–87. The statute requires placement in the least restrictive setting only if such a placement is "consistent with the safety of the community and the best interest of the child."

Ind.Code § 31–37–18–6. In other words, "the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *K.A.*, 775 N.E.2d at 387.

The Dispositional Order indicates D.B. had prior true findings of criminal mischief when he was ten, theft when he was thirteen, and battery when he was eleven and fifteen, as well as other allegations. The juvenile court had previously ordered alternative dispositions for D.B., including docket fees, probation, probation fees, probation administrative fees, placement in home, faith-based counseling, home-based counseling, community service work and a suspended commitment to the Department of Correction.

The Pre–Dispositional Report indicates D.B.'s older brother began molesting him when D.B. was six.[6] In addition, the report notes D.B. had fondled two female peers when he was six or seven; and D.B. had begun touching A.B. sexually when he was eight and she was four.[7] D.B. also used marijuana on a daily basis and had attendance problems at school.

The juvenile court based its disposition on D.B.'s prior juvenile history and the apparently limited success of prior dispositional alternatives. It noted D.B. had "moved from [being] a victim to [a] predator." (Tr. at 119.) The juvenile court included individual counseling, sexual offender counseling, sexual offender treatment and continuation of his education as part of his commitment to the Department of Correction. Accordingly, we cannot say the juvenile court abused its discretion in ordering D.B. placed in the Department of Correction.

### 4. *Pre–Disposition Credit*

D.B. argues the juvenile court abused its discretion by failing to award him "pre-disposition detention credit." (Br. of Appellant at 11.) The State responds by urging us to follow *D.S. v. State*, 829 N.E.2d 1081, 1083–84 (Ind.Ct.App. 2005), wherein we concluded the juvenile code does not authorize the juvenile court to grant credit time for pre-disposition detention.[8]

The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the discretion of the juvenile court and will be reversed if there has been an abuse of that discretion. *C.C.*, 831 N.E.2d at 216. An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 217.

We need not decide whether the juvenile code authorizes credit for pre-disposition detention. The juvenile court placed D.B. in the Department of Corrections until his eighteenth birthday. Therefore, regardless of any pre-disposition detention credit to which D.B. might otherwise be entitled, D.B. will remain in the Department of Corrections until his eighteenth birthday.[9]

---

6. D.B.'s brother was adjudicated a delinquent as a result and placed in the same secure treatment facility that was recommended for D.B. After D.B.'s brother was released from the facility, he continued to molest D.B.

7. D.B. stated he molested A.B. repeatedly when she was between the ages of five and seven, but had not molested her for some time prior to this incident.

8. The State appropriately notes *D.S.* is based on *J.D. v. State*, 826 N.E.2d 146 (Ind.Ct.App. 2005) and that our Indiana Supreme Court has granted transfer in *J.D.*

9. In *A.E. v. State*, 829 N.E.2d 549 (Ind.Ct. App.2005), *trans. granted*, we held that when a juvenile is placed with the Department of Correction for a fixed period under Ind.Code § 31–37–19–9, the juvenile is entitled to credit

Accordingly, the juvenile court did not abuse its discretion in denying D.B. credit for his pre-disposition detention.

## CONCLUSION

The evidence supports the juvenile court's true findings of rape and child molesting. D.B.'s adjudication as a delinquent for rape and child molesting based on a single act of nonconsensual sexual intercourse violates the double jeopardy protections of the Indiana Constitution. D.B.'s placement with the Department of Correction until his eighteenth birthday was not an abuse of discretion. The juvenile court did not abuse its discretion in denying D.B. credit for his pre-dispositional detention. Accordingly, we affirm in part, reverse in part, and remand to the juvenile court with instructions that it vacate the true finding of child molesting.

Affirmed in part, reversed in part, and remanded with instructions.

FRIEDLANDER, J., and CRONE, J., concur.

---

for pre-disposition detention. A.E. and D.B. each had a "finite sentence—one from which he could 'anticipate release upon a day certain,'" analogous to the sentence of a defendant in the criminal justice system. *Id.* at 554 (quoting *Matter of Tina T.*, 579 N.E.2d 48, 61 (Ind.1991)). A.E. was placed with the Department of Correction for a period of 18 months, which is analogous to a term of years in the adult criminal justice system and for which term credit time may be earned. *See* Ind.Code § 35–50–6–3 (specifying amount of credit time earned by classification).

In contrast, D.B. was placed with the Department of Correction until his eighteenth birthday. Because this is the maximum sentence allowed, D.B.'s disposition is more analogous to a sentence of life without possibility of parole, for which sentence credit time may not be earned. *See* Ind.Code § 35–50–6–8 ("A person serving a sentence of life imprisonment without parole does not earn credit time[.]")