## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2017, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of F.M. A Child Alleged To Be A Delinquent Child,<br><br>F.M.,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Petitioner.* | August 16, 2017<br><br>Court of Appeals Case No. 52A05-1703-JV-615<br><br>Appeal from the Miami Superior Court<br><br>The Honorable Daniel C. Banina, Judge<br><br>Trial Court Cause No. 52D02-1409-JD-42 |

**Bailey, Judge.**

# Case Summary

[1]	F.M. was adjudicated a delinquent and was subject to multiple placements, including parental supervision with probation conditions, a group home, a secure youth center, a lower-security youth center, and parental supervision with electronic monitoring. After two and one-half years, F.M.'s probation officer recommended that he be placed in the Indiana Department of Correction, Juvenile Division ("the DOC") and the juvenile court modified the disposition decree and ordered placement in the DOC. F.M. appeals, presenting the sole issue of whether the court abused its discretion when it placed F.M. in the DOC. We affirm.

# Facts and Procedural History

[2]	In a petition filed on August 26, 2014, the State alleged fourteen-year-old F.M. to be a delinquent child for leaving home without permission. He was placed in shelter care but released to his mother ("Mother") two days later. While Mother was driving home, F.M. jumped out of her vehicle. He was missing for the weekend. F.M. was placed back in shelter care; he left the building but was apprehended outside. On September 4, 2014, the State alleged that F.M. was delinquent for having committed acts that would be Attempted Escape and Escape, as Level 6 felonies,[1] if committed by an adult.

---

[1] Ind. Code § 35-44.1-3-4.

[3] On October 1, 2014, F.M. admitted that he left home without permission. He was placed in White's Residential Home ("White's"). By agreement between F.M. and the State, the escape allegations remained pending. F.M. was advised that, if he behaved well at White's, the State would dismiss the escape-based allegations.

[4] F.M.'s behavior at White's was such that he was terminated from that placement after approximately six months. At a hearing conducted on March 25, 2015, the State advised the juvenile court that the dismissal agreement had failed, and F.M. admitted the truth of the Escape allegation. He was placed in the secure section of the Youth Opportunity Center ("the YOC"). At that juncture, the juvenile court advised F.M. that he was likely to be placed in Boys School if he was uncooperative at the YOC.

[5] At a placement review hearing conducted in June of 2015, F.M.'s probation officer reported that F.M. had participated minimally and struggled with his behavior in his latest placement. F.M. was again warned that he was "on track" to Boys School. (Tr. Vol. II pgs. 40-41.) At a placement review hearing in August of 2015, F.M.'s probation officer reported that there had been improvement on F.M.'s part. By December of 2015, F.M. showed some improvement educationally, but his therapist reported a lack of progress and recommended a different placement. F.M. was subsequently transferred to the George Junior Group Home ("George Junior"). F.M. was at George Junior for several months, and he was reportedly generally compliant there. However,

there were some reported incidences of F.M. punching holes in walls. He also left the campus without permission on one occasion, and police were called.

[6] During August of 2016, F.M. was returned to the custody of his mother ("Mother"), subject to probation conditions. By October, Mother advised F.M.'s probation officer that he was sometimes not returning home. Reportedly, F.M. was missing for an entire weekend. F.M. had been suspended from school for eleven days during a nine-week period and the Salvation Army, where F.M. was to perform community service, reported that F.M. was non-compliant.

[7] On November 4, 2016, the State filed petitions seeking modification of F.M.'s dispositional decree. The State alleged that F.M. violated his probation by failing to obey school rules, failing to complete community service, failing to obey parental rules, and testing positive for marijuana. At a hearing on November 30, 2016, the juvenile court again warned F.M. about the prospect of Boy's School and instructed him not to leave home without permission. Later that night, F.M. went to a friend's house and failed to return home.

[8] On December 1, 2016, F.M. skipped school. On December 4, 2016, he again failed to return to Mother's home. On the following day, F.M. failed to report to a meeting with his probation officer.

[9] On December 6, 2016, the State filed an additional petition seeking modification of F.M.'s dispositional decree. After fact-finding and dispositional

hearings, the juvenile court committed F.M. to the DOC for placement at the Indiana Boys School. This appeal ensued.

# Discussion and Decision

[10] The juvenile court has discretion to choose the specific disposition of a juvenile adjudicated a delinquent "subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition." *C.T.S. v. State*, 781 N.E.2d 1193, 1202 (Ind. Ct. App. 2003). We will not reverse a juvenile court's disposition unless the juvenile court abuses its discretion. *Id.* The juvenile court abuses its discretion if its action is "clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *D.B. v. State*, 842 N.E.2d 399, 404-05 (Ind. Ct. App. 2006).

[11] Indiana Code Section 31-37-18-6 provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and

>    (B)  close to the parent's home, consistent with the best
>         interest and special needs of the child;
>
>    (2) least interferes with family autonomy;
>
>    (3) is least disruptive of family life;
>
>    (4) imposes the least restraint on the freedom of the child and the
>        child's parent, guardian, or custodian; and
>
>    (5) provides a reasonable opportunity for participation by the
>        child's parent, guardian, or custodian.

[12]  We have previously noted that this section requires that the juvenile court select the least restrictive placement in most situations. *D.B.*, 842 N.E.2d at 405. "However, the statute contains language which reveals that under certain circumstances a more restrictive placement might be appropriate." *K.A. v. State*, 775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002), *trans. denied*. Indeed, the statute requires placement in the least restrictive setting only if such placement is "consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. In other words, "the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *K.A.*, 775 N.E.2d at 387.

[13]  F.M. argues that his probation violations were relatively minor and did not justify placement in the DOC. He points out several alleged obstacles to his successful completion of probation, that is, his learning disability, mental illnesses, and parental omissions. He requests that we remand the matter and

order that the juvenile court place him in a less-restrictive environment, preferably George Junior. He stops short of arguing that this facility has a current opening or would accept him back.

[14] F.M.'s probation officer testified that F.M. had initially been released to Mother's custody; he jumped out of the vehicle and absconded. He was placed in various facilities, including Kinsey Youth Center, White's, a secure youth center in Muncie, and George Junior. While in Mother's custody, F.M. refused to do his schoolwork, although the requirements and hours had been modified due to F.M.'s learning disabilities and mental health diagnoses. According to Mother, F.M. would feign sickness to avoid school. She testified that she drove F.M. to the Salvation Army to perform community service. Nonetheless, Salvation Army employees testified that F.M. was not signing in as expected. It appeared that he was getting out of Mother's vehicle, entering the Salvation Army building, leaving, and then later calling Mother for a ride home. On numerous occasions, F.M. refused to return home as directed and keep Mother informed of his whereabouts. Mother testified that she could not control F.M.

[15] The placement statute requires placement in the least restrictive setting only if such placement is "consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. Here, the juvenile court heard that a series of less-restrictive options (including home detention, electronic monitoring, supervised probation, secure detention, and non-secure detention) had not been effective. F.M.'s probation officer opined that placement in the

DOC was in F.M.'s best interests. In light of this evidence, we cannot say that the juvenile court abused its discretion.

[16]     Affirmed.

Baker, J., and Altice, J., concur.