## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 12 2017, 11:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery A. Earl
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

B.W.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

October 12, 2017

Court of Appeals Case No.
32A01-1705-JV-924

Appeal from the Hendricks Superior Court.
The Honorable Karen M. Love, Judge.
Trial Court Cause No.
32D03-1606-JD-163

**Friedlander, Senior Judge**

[1] B.W. appeals the juvenile court's dispositional order. We affirm.

[2] B.W. presents one issue for our review, which we restate as whether the juvenile court abused its discretion by awarding wardship of B.W. to the Department of Correction (DOC).

[3] On June 20, 2016, the State filed a delinquency petition alleging that B.W. had committed the offenses of conspiracy to commit robbery, a Level 5 felony if committed by an adult,[1] and possession of paraphernalia, a Class A misdemeanor if committed by an adult.[2] At the fact-finding hearing, B.W. admitted to the allegations, and the juvenile court entered a true finding. The court awarded wardship of B.W. to the DOC but suspended that commitment and placed B.W. on supervised probation for twenty-four months. Specific conditions of B.W.'s probation included a 6:30 p.m. curfew, substance abuse evaluation and treatment, abstinence from intoxicating or illegal substances, school attendance and appropriate behavior, no contact with his co-conspirators Z.M. or M.T., at least part-time employment, a letter of apology to the victim, truthful testimony against Z.M. and M.T., and participation in home-based counseling.

[4] On October 27, 2016, the State filed a petition to modify B.W.'s supervised probation due to allegations of a positive drug screen for marijuana and suspension from school due to unexcused absences. This petition was soon followed by the filing of a supplemental petition to modify based upon B.W.'s pending expulsion from school. At a hearing on these matters, B.W. admitted

[1] Ind. Code §§ 35-42-5-1 (2014), 35-41-5-2 (2014).

[2] Ind. Code § 35-48-4-8.3 (2015).

to violating his probation, and the juvenile court modified the terms of his probation to add participation in mentoring services and family therapy.

[5] The State filed another petition to modify B.W.'s probation on February 16, 2017, alleging that B.W. had again violated the terms of his probation, specifically the 6:30 p.m. curfew and the no contact with Z.M. The juvenile court held a hearing on the State's petition, after which it entered a true finding and imposed the previously-suspended commitment to the DOC. B.W. now appeals.

[6] As B.W. concedes, the evidence in this case is undisputed that he violated the curfew term of his probation. *See* Appellant's Br. p. 9. He claims, however, that his commitment to the DOC is improper because it is not the least restrictive alternative available.

[7] The choice of the specific disposition of a juvenile adjudicated to be delinquent is a matter within the sound discretion of the juvenile court. *J.S. v. State*, 881 N.E.2d 26 (Ind. Ct. App. 2008). This discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.* We will reverse a juvenile disposition only for an abuse of discretion, which occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual inferences drawn therefrom. *Id.* Accordingly, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id.*

[8]     Indiana Code section 31-37-18-6 (1997) sets forth the following factors a juvenile court must consider when entering a dispositional decree:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Although this section requires the juvenile court to select the least restrictive placement, that requirement is limited by the safety of the community and the best interest of the child. *D.B. v. State*, 842 N.E.2d 399 (Ind. Ct. App. 2006). Thus, the statute recognizes that, in certain situations, the best interest of the child is better served by a more restrictive placement. *Id.*

[9]     B.W.'s father testified at the fact-finding hearing that on February 4, 2017, the police came to his home and woke him at approximately 1:00 a.m. At that time, they informed him that they had heard B.W. was at a party and that Z.M. was also at the party. B.W.'s father did not know if B.W. was at home because he had gone to bed much earlier in the evening when B.W. and his brothers

were all at home. He further testified that he and B.W. argue a lot and that B.W. knows what he is supposed to do for his probation and "there's not much [B.W.'s father] can do." Tr. p. 26.

[10] While acknowledging B.W.'s effort to obtain employment, his care coordinator testified that each of B.W.'s weekly drug screens had been positive for marijuana and that his substance abuse therapist closed his file as unsuccessful after he failed to attend three appointments. She further testified that B.W. had an appointment for a court-ordered psychological evaluation but had canceled the appointment. In summarizing her observations of B.W., she testified, "The only thing he really cares about right now is working. He doesn't seem too motivated to go to school, to participate in services." *Id.* at 41.

[11] In addition, B.W.'s probation officer testified that B.W.'s cooperation has been "hit and miss." *Id.* at 43. She testified that B.W. sleeps through appointments and that he does not cooperate with his providers, other than his mentor. She also mentioned his positive drug screens, his withdrawal from school, and his withdrawal from or being "kicked out" of his last GED program. *Id.* Finally, she testified that B.W.'s probation "has not been successful up to this point." *Id.*

[12] In his testimony, B.W. admitted that he was out past his curfew on February 4, 2017, at the home of his friend, Cory. He testified that he left Cory's and went over to the party because he was told his brother was there. He claims he knocked on the door of the loud party, asked for his brother, told his brother to

go home, and went back to Cory's — all without attending the party or seeing Z.M. B.W. further admitted that he had failed drug tests, slept through scheduled appointments, failed to have a psychological evaluation, and not begun GED classes or treatment for his substance abuse issues. Moreover, he continued to be equivocal about his marijuana use even as he was testifying at the fact-finding hearing. When told he was going to be drug tested after the hearing and asked if it would be a "clean" test, B.W.'s response was that it "should be." *Id.* at 54. The State further asked if he had smoked marijuana within the last thirty days, and B.W. responded, "I'd say no. I really — I haven't smoked and I can pass a – I can pass a drug screen. I'm pretty sure of it." *Id.* at 55.

[13] In stating its decision, the juvenile court observed that although B.W.'s employment is a positive thing, his education is far more important. The court declared it was "very unfortunate" that B.W. canceled his psychological evaluation appointment, dropped out of school, and continued to use marijuana. *Id.* at 47. The court further explained that by being sent to the DOC, B.W. would be able to obtain his GED, receive a psychological evaluation, and receive needed substance abuse treatment. Accordingly, in its dispositional order, the court strongly recommended to the DOC that B.W. be placed in Camp Summit "so that he can get his GED and get some training." *Id.* at 61. In its order, the court additionally determined that B.W.'s father cannot or will not provide B.W. with the supervision he needs.

[14]    By its terms, Indiana Code section 31-37-18-6 recognizes that while less restrictive placement options may be available, in certain situations a less restrictive placement is not consistent with the best interest of the child. This is such a situation. Within the first seven months of his twenty-four-month probation term, B.W. had accumulated three petitions to modify. Upon true findings for the first two petitions, the juvenile court employed less restrictive dispositions and merely continued B.W.'s probation with the addition of mentoring services and family therapy. Yet none of these less restrictive dispositions were successful at rehabilitating B.W. His continuing actions during his short term of probation proved that he is unable or unwilling to abide by less restrictive dispositions. As the court remarked, a commitment to the DOC will significantly increase the chances that B.W. secures his GED and training for future employment as well as treatment to address his substance abuse issues. Thus, the court's decision to commit B.W. to the DOC fulfills the juvenile system's dual purpose of rehabilitation and behavioral re-direction. *See S.C. v. State*, 779 N.E.2d 937 (Ind. Ct. App. 2002) (stating that nature of juvenile process is rehabilitation and aid to juvenile to direct his behavior so he will not later become a criminal), *trans. denied*.

[15]    For the foregoing reasons, we conclude the juvenile court did not abuse its discretion in committing B.W. to the DOC.

[16]    Judgment affirmed.

May, J., and Crone, J., concur.