## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2019, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michelle Laux
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R.P., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | August 14, 2019 <br><br> Court of Appeals Case No. <br> 19A-JV-536 <br><br> Appeal from the St. Joseph Probate Court <br><br> The Honorable Jason A. Cichowicz, Judge <br><br> The Honorable Graham C. Polando, Magistrate <br><br> Trial Court Cause Nos. <br> 71J01-1811-JD-401 <br> 71J01-1811-JD-407 |

**Bailey, Judge.**

# Case Summary

[1] R.P. was adjudicated a delinquent and placed in the Indiana Department of Correction, Juvenile Division ("the DOC"). R.P. appeals, presenting the sole issue of whether the juvenile court abused its discretion by placing him in the DOC for his first delinquency adjudication. We affirm.

# Facts and Procedural History

[2] In 2017, R.P. was removed from his home and adjudicated a Child in Need of Services ("CHINS") because he had been physically abused and neglected. During the pendency of the CHINS proceedings, R.P. was placed in emergency shelter care, relative placement, foster care, and the Youth Opportunity Center ("YOC"). During R.P.'s placement at the YOC, he threatened staff, was physically aggressive, and destroyed property. He also threatened to kill himself. After ten months, YOC requested that R.P. be removed for his personal safety and the safety of the staff and residents.

[3] The Indiana Department of Child Services ("the DCS") contacted nine facilities in an effort to find a secure residential placement for R.P. After none of those facilities would accept R.P., the DCS recommended that he be returned to the custody of his mother, S.B. ("Mother"). Shortly thereafter, Mother called police to report that R.P. had pulled her hair and struck her.

[4] On November 29 and 30, 2018, the State filed delinquency petitions under three cause numbers, alleging that R.P., then aged fourteen, had engaged in conduct

that would, if he were an adult, constitute battery, domestic battery, and criminal mischief. Specifically, the State alleged that R.P. battered Mother and a YOC worker and broke windshields of four YOC vehicles.

[5] On December 19, 2018, R.P. admitted the truth of the allegations of domestic battery and criminal mischief; the battery allegation was dismissed. R.P. was released to the custody of Mother under Trust House Arrest program conditions.

[6] On February 13, 2018, R.P. appeared at a dispositional hearing. Due to the problems in prior placements and the unavailability of another secure juvenile placement facility, the probation department recommended that R.P. be placed in the DOC. The juvenile court ordered R.P.'s placement in the DOC. He now appeals.

# Discussion and Decision

[7] The juvenile court has discretion to choose the specific disposition of a juvenile adjudicated a delinquent "subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition." *C.T.S. v. State*, 781 N.E.2d 1193, 1202 (Ind. Ct. App. 2003). We will not reverse a juvenile court's disposition unless the juvenile court abuses its discretion. *Id.* The juvenile court abuses its discretion if its action is "clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

deductions to be drawn therefrom." *D.B. v. State*, 842 N.E.2d 399, 404-05 (Ind. Ct. App. 2006).

[8] Indiana Code Section 31-37-18-6 provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[9] We have previously noted that this section requires that the juvenile court select the least restrictive placement in most situations. *D.B.*, 842 N.E.2d at 405. "However, the statute contains language which reveals that under certain circumstances a more restrictive placement might be appropriate." *K.A. v. State*,

775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002), *trans. denied.* Indeed, the statute requires placement in the least restrictive setting only if such placement is "consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. In other words, "the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *K.A.*, 775 N.E.2d at 387.

[10] R.P. has a long history of unsuccessful placements. In 2017, after he was adjudicated a CHINS, R.P. was placed with his paternal grandparents until they requested his removal. R.P. was placed with a foster family but the foster parents alleged that R.P. destroyed and stole property and was verbally aggressive. Both the foster parents and R.P. asked that the foster care placement be ended. R.P. was placed in emergency shelter care at Bashor Children's Home but the placement was marred by reported incidents of property destruction, verbal defiance, physical aggression, threats to peers, a run-away attempt, and a physical assault upon staff. R.P. was temporarily returned to Mother and then placed in the YOC.

[11] At the YOC, R.P. was subjected to restraint on multiple occasions. YOC reports disclosed the basis for those restraints:

> 1/17/18  R.P. threatened to kill himself.
>
> 1/28/18  R.P. broke a telephone, threw slippers, and threatened staff members.
>
> 1/29/18  R.P. threatened another resident.

2/10/18 R.P. (with a closed fist) hit staff attempting to utilize suicide precaution blankets.

2/17/18 R.P. threatened to hit staff, kicked his bedroom door, and attempted to bite a staff member.

5/11/18 R.P. swallowed dice in a suicide attempt.

5/31/18 After another resident killed a frog, R.P. participated in dissecting, skinning, and playing with it.

6/2/18 R.P. pulled a fire alarm and banged his head on the floor.

7/8/18 R.P. kicked and attempted to punch staff members.

9/23/18 R.P. (with a closed fist) struck a staff member in the mouth.

9/24/18 R.P. attempted to bite staff members.

10/1/18 R.P. threatened to kill staff members and pushed them several times.

10/4/18 R.P. hit a staff member in the head, punched a staff member in the chest, and spit at staff.

(App. Vol. IV, pg. 71.)

[12] R.P. contends that his significant adjustment difficulties arose from his history of abuse and neglect and that a first offense does not justify placement in the DOC. If R.P. could receive the intensive services he needs in a less restrictive environment, we would be inclined to agree. However, nine youth facilities

declined to accept R.P. The placement statute requires placement in the least restrictive setting only if such placement is "consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. Ultimately, the juvenile court was severely limited in the options for R.P. We cannot say that the juvenile court abused its discretion.

[13] Affirmed.

Najam, J., and May, J., concur.