## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2020, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Catherine E. Brizzi
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.H.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 29, 2020

Court of Appeals Case No.
20A-JV-1003

Appeal from the Allen Superior
Court

The Honorable Andrea Trevino,
Judge

The Honorable Carolyn Foley,
Magistrate

Trial Court Cause No.
02D07-1806-JD-719

**Sharpnack, Senior Judge.**

# Statement of the Case

D.H. appeals from the juvenile court's order placing her in the custody of the Indiana Department of Correction ("DOC"), contending that the trial court abused its discretion in so doing. We affirm.

# Issue

D.H. presents the following issue for our review: whether the juvenile court abused its discretion in not choosing a less restrictive disposition.

# Facts and Procedural History

D.H. was around thirteen years old and in the eighth grade at the time of her original offense at issue in this appeal. On June 12, 2018, New Haven Police Officer Amber Woodson ("Officer Woodson") responded to a report of a theft which had occurred on May 31, 2018. D.H.'s classmate, N.C., lived next door to her. D.H. was aware that N.C. had two cell phones, one of which, a black, LG Android X20, she kept in her backpack. On the night in question, D.H. broke into N.C.'s home through the window in N.C.'s bedroom and took the cell phone from N.C.'s backpack. N.C. and her family were at home when D.H. took N.C.'s phone, but no one was in the bedroom. N.C.'s mother had previously forbidden D.H. from entering their home.

D.H.'s mother found the phone in D.H.'s possession, knew it belonged to N.C., and returned it to N.C.'s mother. D.H. admitted that she dropped the phone when she possessed it and that the screen had cracked. D.H.'s mother agreed to

have the phone repaired and asked Officer Woodson to explain to D.H. the consequences of breaking into an occupied home, especially at 10:00 p.m.

[5] On August 16, 2018, the juvenile court held a detention hearing and found that there was probable cause to believe that D.H. had committed Level 4 felony burglary if committed by an adult and Class A misdemeanor theft if committed by an adult. The juvenile court authorized the filing of a petition to adjudicate D.H. as a delinquent child and she was designated as a violent offender due to the burglary charge. The juvenile court conditionally released D.H. to the Detention Alternative Program's ("DAP") Curfew Check Component and ordered her to undergo individual counseling.

[6] On August 29, 2018, the juvenile court held an initial hearing at which D.H. admitted to the burglary charge and the State dismissed the theft charge. The court adjudicated D.H. a delinquent child and ordered her to continue in DAP and with individual counseling. At the October 24, 2018 dispositional hearing, the trial court placed D.H. under formal probation supervision, ordered her to participate in individual counseling, to submit to drug screens, and to write a "sincere and appropriate" letter of apology, Appellant's App. p. 72, among other conditions.

[7] On April 2, 2019, D.H. and her parents attended a probation meeting at which D.H. was uncooperative. More specifically, D.H. refused to answer questions and muttered under her breath when her parents attempted to speak. D.H.'s parents reported that D.H. and a friend had taken D.H.'s father's car without

permission or a valid driver's license. D.H. also took a debit card that was not hers and, when she returned the car, a side view mirror was broken. When D.H.'s father confronted D.H. about taking the car, D.H. responded that she "did not do anything wrong." *Id.* at 81. She failed to obey her parents' simple requests and failed to attend school regularly. Probation Officer Erin Chapla ("Officer Chapla") reported to the juvenile court that D.H. was "uncooperative to the point probation services will not work." *Id.* That same day, Officer Chapla filed a probable cause affidavit alleging a violation of the court's dispositional order, citing the above incidents.

[8] At the detention review hearing held on April 5, 2019, the trial court found probable cause that D.H. had committed the violations and authorized the filing of a petition to modify the current dispositional order. The court further ordered D.H. into temporary secure detention in the Allen County Juvenile Center ("ACJC") and to participate in the Thinking Errors Program. D.H. admitted the violations at her modification hearing. D.H. was ordered by the juvenile court to participate in the Anklet Component of DAP and home-based family counseling, and to submit to substance abuse and mental health assessments, in addition to random urinalysis and alco-sensor testing.

[9] Approximately two weeks after meeting with Officer Chapla, D.H. was suspended from school for two days because she had been fighting. She was placed in the Allen County Day/Evening Reporting Program for the duration of her suspension. The next month, D.H.'s mother called Probation Officer Nicholas Diagostino ("Officer Diagostino") and stated that D.H. had let

various other teenagers into her home and that these teenagers had stolen items from the house, including a Play Station.

[10] Keisha Thierry completed a mental health and substance abuse assessment for D.H. on May 8, 2019 per the juvenile court's order. She found that D.H. tended to blame others for her problems, was impulsive, irresponsible, undependable, and would "readily oppose anyone who challenged her." *Id.* at 97. Thierry also stated that when D.H. was confronted with minor pressures she was "quickly provoked into noncompliance and reactive anger." *Id.* At the time of this assessment, D.H. stated that she had been in ten physical altercations with peers in the past year.

[11] Next, on May 29, 2019, Probation Officer Robert McComb filed a probable cause affidavit alleging a violation of D.H.'s conditional release on the grounds that D.H. had committed the offense of absence from home detention, a Class A misdemeanor if committed by an adult. The next day, the juvenile court held a detention review hearing, finding that probable cause existed for the misdemeanor offense as well as the violation of conditional release. The juvenile court authorized the filing of a delinquency petition regarding the unauthorized absence offense. D.H. was ordered into temporary secure detention at the ACJC and to continue participating in home-based family counseling and the Thinking Errors Program. On June 4, 2019, D.H. admitted to the unauthorized absence from home detention offense, was adjudicated delinquent, and her detention at the ACJC was continued with the same special conditions.

[12]     On July 16, 2019, the juvenile court held a modified dispositional hearing at which formal probation supervision was continued for D.H.  She was ordered to participate in home-based family counseling and to submit to urinalysis testing and a psychiatric assessment.

[13]     Officer Chapla filed a probable cause affidavit on August 2, 2019, alleging a violation of the juvenile court's dispositional order.  In the affidavit, she alleged that D.H. used illegal or intoxicating substances and that she failed to participate in casework services.  After a finding of probable cause, the juvenile court issued a warrant and Officer Diagostino took D.H. into custody at the ACJC.  The juvenile court held a detention review hearing on August 5, 2019, during which probable cause was found for the violations of the dispositional order.  The juvenile court authorized the filing of the petition to modify the current dispositional order and ordered D.H. to remain in detention at the ACJC.

[14]     On August 13, 2019, the juvenile court held a modification hearing in which D.H. admitted to using intoxicating or illegal substances and to failing to attend home-based therapy services.  The juvenile court continued D.H.'s detention at the ACJC pending a modified dispositional hearing which was held on September 25, 2019.  At that time, D.H. was ordered into placement at Valle Vista Hospital.

[15] D.H. spent most of December with restrictions on her behavior due to her violation of facility rules. On December 26, 2019, and December 28, 2019, D.H. engaged in physical altercations with another resident at the facility.

[16] On January 29, 2020, the juvenile court held a placement review hearing at which it ordered D.H. to complete her treatment plan at Valle Vista Hospital. At the hearing, the evidence showed that initially D.H. cooperated with her treatment plan, but as time went on her behavior worsened and she became noncompliant. D.H.'s progress was further delayed by her mother's attitude toward the program.

[17] Elizabeth Benitez, D.H.'s Valle Vista counselor, informed Probation Officer Joel Miller ("Officer Miller") that D.H. had not been compliant with her treatment. Benitez reported that D.H. was not attending school or therapy, that she was having physical altercations with other residents and staff, and that she had been forcibly restrained twice in two weeks. More specifically, Benitez told Officer Miller that on February 21, 2020, D.H. left Valle Vista and went to an apartment across the street from the facility for approximately one hour without permission. When D.H. returned, she physically assaulted a staff member. When asked why she committed the assault, D.H. responded, "All I did was kick someone in the face." Tr. Vol. IV, p. 10. Additionally, Benitez reported that three days later, police were dispatched to Valle Vista Hospital regarding a disturbance. Staff members informed police that several juvenile female patients, including D.H., had forced open a door and were running around the

facility. When a staff member attempted to restrain D.H., D.H. struck the staff member in the face with a closed fist.

[18] On February 24, 2020, Valle Vista staff provided D.H.'s probation officers with twenty pages of discipline documents, and the probation department took D.H. into custody at the Johnson County Juvenile Detention Center the next day. D.H. was then transferred to the ACJC. The juvenile court held a detention review hearing on February 27, 2020 and found probable cause for the new offense of battery, a Class A misdemeanor if committed by an adult, as well as a violation of the dispositional order. The juvenile court also authorized the filing of a petition to adjudge delinquency and to modify the current dispositional order. The court ordered D.H. to remain at the ACJC and to continue participation in the Thinking Errors Program and drug/alcohol group classes.

[19] On March 12, 2020, the juvenile court held an initial hearing for D.H.'s battery offense and a modification hearing for the initial burglary offense. D.H. admitted to the battery offense and was adjudicated delinquent. D H. also admitted to the violation of the dispositional order, and the court granted the modification. D.H.'s detention at the ACJC was continued, and both matters were scheduled for a dispositional/modified dispositional hearing on April 7, 2020. At the hearing, the juvenile court found that it was in D.H.'s best interests for her to be committed to the DOC. The juvenile court specifically determined that the DOC was the proper placement for D.H. based on her

escalating behavior, her failure to take advantage of rehabilitative services, and her high risk of reoffending.

# Discussion and Decision

[20] Once a juvenile court determines a child is a delinquent, the court must hold a dispositional hearing to consider, among other topics, "[a]lternatives for the care, treatment, rehabilitation, or placement of the child." Ind. Code §31-37-18-1 (1997). In deciding where a child should be placed, the court must consider the following:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[21] Ind. Code §31-37-18-6 (1997). Quite literally, the statute requires the juvenile court to select the least restrictive placement in most situations; however, the

statute also permits a court to impose a more restrictive placement under certain circumstances. *J.S. v. State*, 881 N.E.2d 26, 28-29 (Ind. Ct. App. 2008).

[22] Subject to these statutory considerations, we review the trial court's choice of disposition for an abuse of discretion. *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006). An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *D.B. v. State*, 842 N.E.2d 399, 404-05 (Ind. Ct. App. 2006).

[23] The juvenile court chose a more restrictive placement in sending D.H. to the DOC, and D.H. argues the evidence does not support that decision. More specifically, she contends that the trial court abused its discretion by failing to afford her the opportunity to try an Electronic Monitoring Program ("EMP"). We disagree.

[24] Prior to D.H.'s commitment to the DOC, D.H. had been provided with the following opportunities at rehabilitation. She was initially placed on formal probation for her burglary adjudication. She violated the terms of this probation on multiple occasions by taking her father's car without his permission, failing to attend school, and failing to obey her parents' requests. The juvenile court ordered D.H. to participate in the DAP Curfew Check Component, the Anklet Monitory Component, the Thinking Errors Program, family-focused and individual therapy, drug/alcohol group classes at the ACJC, and placement at Valle Vista Hospital. None of these less restrictive

opportunities had an impact on D.H.'s actions or attitude. The evidence supports the trial court's determination that less restrictive alternatives had failed to deter D.H. from misconduct.

D.H.'s placement with the DOC is warranted by her pattern of noncompliant and disruptive behavior. As the court noted, "We have all talked about how frustrating it's been working with [D.H.] because she is so smart. She is so, so smart." Tr. Vol. IV, p. 13. The juvenile court further reasoned, D.H. "is going to be able to get a more thorough educational service at the [DOC], and frankly, that's also one of the reasons that I, I think a commitment to the DOC is in her best interests because I do not want to squander this intelligence. Now she is squandering it, really clearly, she's squandering it. But I want to give her the best possible options that, that I can." *Id*. at 14.

We find no abuse of discretion in the juvenile court's placement of D.H. in the custody of the DOC despite the existence of another, less restrictive disposition.

# Conclusion

For the reasons stated above, we affirm the judgment of the juvenile court.

Affirmed.

May, J., and Pyle, J., concur.