v.

STATE of Indiana, Appellee–Petitioner.

No. 49A05–0205–JV–205.

Court of Appeals of Indiana.

Oct. 11, 2002.

Publication Ordered Nov. 22, 2002.

Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-respondent S.C. appeals the trial court's dispositional order awarding

wardship to the Department of Correction ("the DOC"). We affirm.

### Issue

S.C. presents a single issue for review, which we restate as whether the trial court abused its discretion in awarding wardship to the DOC.

### Facts and Procedural History

On February 13, 2002, a teacher found a plastic bag containing various pills in the media center of Harshman Middle School in Indianapolis. After an investigation, fourteen-year-old S.C. admitted to stealing the pills from her family. One of the pills tested positive for amphetamine, a schedule II controlled substance. On February 14, 2002, the State filed a petition alleging S.C. to be a delinquent child for committing theft and possessing a controlled substance, both of which would be Class D felonies if committed by an adult. At an initial hearing on that date, the trial court rejected S.C.'s admission to the allegation and set the matter for denial hearing. The trial court found that S.C. was "unlikely to appear for subsequent proceedings" and ordered her detained at the juvenile detention center. Appellant's App. at 6.

On March 14, 2002, the parties informed the trial court that S.C. had agreed to admit to the possession allegation in exchange for the State's dismissal of the theft allegation. The State further agreed to make no recommendation as to S.C.'s disposition. The trial court ordered the continued detention of S.C. in the juvenile detention center, referred the matter to the probation department for investigation, and set disposition hearing for April 4, 2002. On April 2, 2002, the trial court granted S.C.'s request for a continuance and reset the disposition hearing for April 25, 2002.

The predispositional report[1] prepared by the probation department indicated that fourteen-year-old S.C. had been the subject of three prior referrals to juvenile court. On September 11, 2000, a petition was filed against S.C. for possession of marijuana and fleeing law enforcement. S.C. admitted to these allegations on January 2, 2001, and was placed on suspended commitment to the DOC. No action was taken on a petition for a runaway that allegedly occurred on October 10, 2000. On November 6, 2000, a complaint was filed against S.C. for disorderly conduct. S.C. admitted to this allegation on November 16, 2000. After admitting to violating her suspended commitment, S.C. was committed to the DOC on April 18, 2001.

The predispositional report further indicated that S.C. "ha[d] been involved in inpatient counseling through Valle Vista and ha[d] been involved with outpatient counseling through Child and Family Guidance Center and Christian Theological Seminary." *Id.* at 37. S.C. had also "received Informal Home Detention, Electronic Monitoring, Suspended Commitment, Community Service, Substance Abuse Evaluation, Counseling, and Department of Corrections." *Id.* The report noted that "[a critical] incident report was filed 3/17/02 after [S.C.] was involved in a conversation about planning an escape." *Id.* at 38. Additionally, the report indicated that S.C. had been prescribed medication for depression; that she had been sexually involved with a thirty-year-old man; that both of S.C.'s parents had used illegal drugs in the past; that her father had a significant legal history, including a murder conviction, as well as an alcohol

---

1. *See* Ind.Code § 31–37–17–1 ("Upon finding that a child is a delinquent child, the juvenile court shall order a probation officer or a caseworker to prepare a predispositional report[.]").

problem; and that an older sister who lived with S.C. and her parents had a juvenile history and had been committed to the DOC in 1992. Finally, "based on [S.C.'s] prior services and legal history," *id.*, the report recommended that S.C. be committed to the DOC and complete educational and counseling programs.

In a predispositional memorandum dated April 22, 2002, a sentencing coordinator from the Marion County Public Defender Agency elaborated on the information contained in the predispositional report, noted that S.C. "ha[d] been deemed eligible for placement in two, local residential facilities[,]" and recommended that S.C. be placed in one of the facilities on a suspended commitment rather than committed to the DOC. *Id.* at 44.

At the disposition hearing on April 25, 2002, S.C.'s counsel urged the presiding magistrate to consider placing S.C. in a residential facility to address her mental health and drug addiction issues. The State responded,

> The only thing I would like to add, Your Honor, is just to re-emphasize what [S.C.'s counsel] had said, but also the fact that I do have a fear that if [S.C.] does not get the treatment she needs, that we also run a very high risk [of] suicide. There is one documented suicide attempt for her already, and, um, I[am] quite frankly afraid that could very well happen again if we don't get her what she needs at this time.

Tr. at 5.

The trial court accepted the terms of the plea agreement, adopted the predispositional report, and noted that it had considered the sentencing coordinator's memorandum. The trial court further noted

> the numerous services offered not just by this Court, but by other service providers. The Court notes that, um, uh; the prior history of [S.C.] with this

Court, and in taking in[to] account the best interest of [S.C.] this Court feels, uh, has no other option but to award guardianship to the Department of Corrections. I will recommend you are there for twelve months. While you are at the Department of Corrections I will recommend that you will receive individual counseling to assist you, uh, regarding, uh, mental health issues, also drug and alcohol issues along with individual counseling. I feel that is in your best interest, uh, placement at Resource or such service would not be beneficial to you.... Good luck to [S.C.] they have excellent programs at Girl[s] School for ya. I hope you take advantage [of] them.

*Id.* at 5–6.

In a dispositional order dated April 25, 2002, the presiding magistrate incorporated the "findings and information contained in the Pre–Dispositional Report". Appellant's App. at 7. The magistrate based her reasons for disposition on these findings and specifically further found that S.C. had a prior history of delinquent activity and true findings; that the trial court had previously exercised other dispositional alternatives, including home placement, counseling, community service, suspended commitment to the DOC, and commitment to the DOC; that the current disposition was "the least restrictive alternative to insure [S.C.'s] welfare and rehabilitation"; that S.C. was "in need of care, treatment, rehabilitation, or placement"; and that "[t]he parent/guardian/custodian does need to participate in a plan of care or treatment for [S.C.]" *Id.* at 7–8. As part of a recommended twelve-month commitment to the DOC, the magistrate recommended that S.C. complete drug/alcohol counseling, individual counseling, and mental health counseling, as well as "successfully complete a Vocational and/or GED program." *Id.* at 8.

In a dispositional order dated April 25, 2002, the trial court judge referred to the predispositional report and the magistrate's order in support of its decision to award wardship to the DOC. *See id.* at 9. S.C. now appeals.

### Discussion and Decision

 S.C. contends that her commitment to the DOC is not rehabilitative, not the least restrictive alternative, and not "consistent with [her] best interest and her special needs." Appellant's Br. at 7.

The choice of a specific disposition of a juvenile adjudicated a delinquent child is within the sound discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition. A juvenile disposition will not be reversed absent a showing of an abuse of discretion. An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.

*E.H. v. State,* 764 N.E.2d 681, 684 (Ind.Ct. App.2002) (citations omitted), *trans. denied.* "Although options other than commitment to an institution are available for juvenile courts to utilize in dealing with a juvenile, there are times when commitment to a suitable public institution is in the 'best interest' of the juvenile and of society." *A.D. v. State,* 736 N.E.2d 1274, 1278 (Ind.Ct.App.2000). "The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal." *Jordan v. State,* 512 N.E.2d 407, 408 (Ind. 1987).

Indiana Code Section 31–37–18–6 governs dispositional decrees and provides,

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:

 (1) is:

 (A) in the least restrictive (most family like) and most appropriate setting available; and

 (B) close to the parents' home, consistent with the best interest and special needs of the child;

 (2) least interferes with family autonomy;

 (3) is least disruptive of family life;

 (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

 (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

If a child is a delinquent child, the juvenile court may award wardship to "the department of correction for housing in a correctional facility for children[.]" Ind.Code § 31–37–19–6(b)(2)(A)(i).

As mentioned above, the trial court noted that S.C. had a prior history of delinquent activity and that it had previously exercised other dispositional alternatives, none of which seem to have rehabilitated S.C. or deterred her from engaging in delinquent activity. S.C.'s conversation about escaping from the juvenile detention center and her suicide attempt further undercut her argument that a less restrictive dispositional alternative is more appropriate and in her best interest. The recommended one-year commitment to the DOC will ensure that S.C. receives, in a secure environment, the extended rehabilitative counseling that she needs to address her mental health and substance abuse issues. *See Madaras v. State,* 425 N.E.2d 670, 672 (Ind.Ct.App.1981) ("As our legislature has recognized, a short term of confinement

can serve many functions, not all of them punitive in nature."). In summary, S.C. has failed to establish an abuse of discretion.

Affirmed.

KIRSCH and DARDEN, JJ., concur.

## *ORDER*

This Court having heretofore handed down its opinion in this appeal on October 11, 2002, marked Memorandum Decision, Not for Publication.

Comes now the Appellee, by counsel, and files herein Verified Motion for Publication of Memorandum Decision, alleging therein that said decision involves legal and factual issues of substantial public importance and as such, said opinion meets the criteria for publication set forth in Appellate Rule 65(A). The Appellee therefore requests this court to order publication of its opinion in this appeal.

The Court having examined said Motion, having reviewed its opinion in this case and being duly advised, now finds that said Motion for Publication should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellee's Verified Motion for Publication of Memorandum Decision is granted and this Court's opinion heretofore handed down in this cause on October 11, 2002, marked Memorandum Decision, Not for Publication, is now ordered published.