**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 29 2012, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK F. JAMES**
Anderson, Agostino & Keller P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.P.J. )<br> )<br>    Appellant-Respondent, )<br> )<br>        vs. )<br> )<br>STATE OF INDIANA, )<br> )<br>    Appellee-Petitioner. ) | No. 71A04-1109-JV-498 |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable Peter J. Nemeth, Judge
Cause No. 71J01-1107-JD-387

**February 29, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-respondent D.P.J. appeals the disposition that was imposed following his adjudication for an act that would be theft if committed by an adult. Specifically, D.P.J. maintains that the juvenile court abused its discretion in committing him to the Indiana Department of Correction (DOC) for assignment to Boys' School after it had waived jurisdiction of D.P.J. to adult court in another case. D.P.J. argues that such an order is against the logic and effect of the facts and circumstances because the juvenile court had previously ruled that D.P.J. was "beyond rehabilitation under the juvenile justice system." Appellant's Br. p. 2.

Concluding that the juvenile court properly committed D.P.J. to the DOC for assignment to Boys' School, we affirm.

## FACTS

On July 25, 2011, seventeen-year-old D.P.J. broke into Charles Chavez's vehicle and stole a CD player. After D.P.J. was apprehended, the State filed a delinquency petition alleging that D.P.J. had committed acts that would be class A misdemeanor resisting law enforcement and class D felony theft if committed by an adult.

On August 10, 2011, D.P.J. and the State entered into an agreement whereby D.P.J. admitted that he committed the theft allegation, the State agreed that it would not seek a waiver to adult court, and that it would dismiss the resisting law enforcement allegation.

At the time of this offense, D.P.J. had two previous theft allegations that had been disposed of on an informal basis. D.P.J. also had prior adjudications for felony theft in

2

January 2008 and felony burglary in November 2009. D.P.J. had been placed on probation for the previous theft adjudication, committed the burglary while on probation, and was placed in the DOC following the burglary adjudication. D.P.J. was released from the DOC in that case on December 27, 2010, which was only seven months before he committed the instant offense.

D.P.J. tested positive for marijuana at his intake in this case. During the fifty-six days that D.P.J. was detained while this case was pending, he accumulated nine incident reports for violations, including destruction of property, gang promotion, lying, battery on staff, possession of contraband, trafficking, and disorderly conduct.

D.P.J. had poor attendance and grades at school, earning only four out of a possible twenty-four credits. He was suspended from school on two occasions for possessing marijuana and cursing at a teacher. D.P.J. received inadequate supervision, structure, and discipline in the home, and his mother believed that she could not control him because he believes that he is "grown." Tr. p. 5-6. The risk assessment determined that D.P.J. was at a "high risk" to re-offend, and a previous assessment that was conducted in 2009 found D.PJ. to be at high risk for violent behavior and to engage in deviant or violent criminal behavior.

On August 22, 2011, subsequent to D.P.J.'s admission in this case, the State filed a second delinquency petition, alleging that D.P.J. had committed an act that would be battery, a class D felony, if committed by an adult. On September 19, 2011, the juvenile court waived D.P.J. to adult court in that case. That same day, the juvenile court

conducted the dispositional hearing in the instant case.  It was determined that D.P.J. had received extensive services, yet continued to commit new offenses.  As a result, the juvenile court awarded the wardship of D.P.J. to the DOC for housing in any correctional facility for children.  D.P.J. now appeals.

## DISCUSSION AND DECISION

As discussed above, D.P.J. maintains that the juvenile court abused its discretion in committing him to the DOC for assignment to Boys' School.  We note that D.P.J. does not argue that a less-restrictive disposition should have been imposed.  Rather, D.P.J.'s argument is premised on the fact that he was waived to adult court in the subsequent battery case, based in part on the conclusion that he is beyond rehabilitation by the juvenile system.

We note that juvenile courts are vested with flexibility in determining the appropriate dispositional alternative to impose on a juvenile delinquent.  L.L. v.State, 774 N.E.2d 554, 558 (Ind. Ct. App. 2002).  The choice of the specific disposition falls within the juvenile court's discretion, subject to the statutory considerations of the welfare of the child, the safety of the community, and the law's policy of favoring the least harsh disposition.  Id. at 556.

We will not reverse a juvenile court's disposition absent a showing of an abuse of discretion.  C.T.S. v. State, 781 N.E.2d 1193, 1202 (Ind. Ct. App. 2003).  An abuse of discretion occurs when the juvenile court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court.  Id.  Although less harsh

4

options other than commitment to the DOC are available for a juvenile court to utilize, "there are times when commitment to a suitable public institution is in the best interest of the juvenile and of society." S.C. v. State, 779 N.E.2d 937, 940 (Ind. Ct. App. 2002).

As discussed above, D.P.J.'s juvenile record is extensive and involves serious property crimes. D.P.J. continues to engage in criminal conduct despite the extensive services offered to him through the juvenile system. D.P.J.'s probation efforts have failed, he has tested positive for marijuana, and there have been reports of serious violations that D.P.J. committed while being held in the juvenile detention center. Tr. p. 8, 9. D.P.J. has performed poorly in school, and his mother is unable to supervise him because she cannot provide him with the discipline he needs. Id. at 5-6. And while awaiting disposition in this case, D.P.J. was charged with another delinquent act that would have been battery, if committed by an adult.

Our review of the dispositional order reveals that the juvenile court thoroughly considered the various options and reasonably concluded that St. Joseph County has no additional services that it could provide to D.P.J. that would sufficiently address his problems and needs. Given this history, commitment to the DOC was the only viable disposition available for the juvenile court to use in response to D.P.J.'s third adjudication for felony-level conduct.

This reasoning notwithstanding, D.P.J. maintains that a disposition within the juvenile system in this case is inconsistent with the finding that he was beyond rehabilitation by that system in the subsequent case and necessarily amounts to an abuse

5

of discretion by the juvenile court. However, this case remains in the juvenile system and the court was required to select a dispositional alternative that was available in the juvenile system.

As noted above, D.P.J. was not waived into adult court in this case, at least in part, because he bargained for, and obtained, an agreement from the State not to seek a waiver in exchange for his plea to the theft. Tr. p. p. 4, 5. The waiver to adult court in the subsequent case was based in part on the fact that D.P.J. had a true finding for a felony offense in this case. Appellant's App. p. 15. Moreover, we cannot say that the two orders are inconsistent as D.P.J. asserts. Indeed, those who remain in the juvenile system are not burdened with the stigma of an adult felony conviction and the consequences that can follow from such a conviction.

Although commitment to the DOC in a juvenile matter is the most severe punishment that the juvenile court can impose, it remains the option of last resort where other less restrictive programs and placements for juveniles have been tried but have failed to rehabilitate. D.P.J. is still considered a juvenile because of his age; therefore, he probably would not be housed with the adult offender population in the DOC for any executed sentence that might be imposed in the battery case. Rather, it is more likely that D.P.J. would be placed in a wing for juvenile offenders, much like a facility in which he would be housed by the DOC in this case for juveniles.

Finally, even assuming solely for the sake of argument that inconsistencies exist between the two orders, the inconsistency inures to D.P.J.'s benefit. More particularly, if

6

D.P.J. cannot be rehabilitated in the juvenile system, he is receiving a windfall by still being maintained within the juvenile system in this case. And because D.P.J. bargained for that windfall through the negotiation process, he should not be permitted to use that as a means to prevent the juvenile court from imposing the disposition that it did in this case. For all of these reasons, we conclude that the juvenile court did not err in committing D.P.J. to the DOC for assignment to Boys' School.

The judgment of the juvenile court is affirmed.

DARDEN, J., and BAILEY, J., concur.