# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 10 2018, 6:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.F., *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, *Appellee-Petitioner.* | August 10, 2018 <br><br> Court of Appeals Case No. 18A-JV-610 <br><br> Appeal from the Henry Circuit Court <br><br> The Honorable Bob A. Witham, Judge <br><br> Trial Court Cause No. 33C01-1706-JD-26 |

**Najam, Judge.**

# Statement of the Case

D.F. appeals from the juvenile court's order modifying a dispositional decree following his adjudication as a delinquent child for battery, as a Class A misdemeanor when committed by an adult. D.F. presents a single issue for our review, namely, whether the juvenile court abused its discretion when awarded wardship of him to the Department of Correction ("DOC").

We affirm.

# Facts and Procedural History

On June 9, 2017, officers with the New Castle Police Department ("NCPD") responded to two calls regarding a juvenile who was breaking into cars. When Officer Jason Boring arrived at the scene of the second break-in, he arrested D.F., who was then sixteen years old. Officer Boring observed that D.F. appeared to be intoxicated, and D.F. told Officer Boring that he had recently taken two clonazepam pills. Officer Boring arrested D.F. but released him with instructions to meet with the juvenile probation department on June 12. D.F. met with the probation department and agreed to the terms of an informal adjustment.

On June 15, D.F. was involved in an altercation with another individual. During the altercation, D.F. punched the man.[1] Officers with the NCPD

---

[1] D.F.'s father allegedly stabbed the same man whom D.F. punched. Officers also arrested D.F.'s father.

arrived at the scene and arrested D.F. In response to the two different arrests, the State filed a delinquency petition against D.F. on June 19. In that petition, the State alleged that D.F. had committed battery, as a Class A misdemeanor when committed by an adult, and two counts of unauthorized entry of a motor vehicle, both as Class B misdemeanors when committed by an adult.

[5] The juvenile court held an initial hearing on the State's petition on June 22. Pursuant to an agreement reached by D.F. and the State, D.F. admitted to battery, as a Class A misdemeanor when committed by an adult, and the juvenile court dismissed the two other charges. At that time, the juvenile court adjudicated D.F. to be a delinquent. The juvenile court placed D.F. on home detention with electronic monitoring and released him into the custody of his grandmother. The court also ordered D.F. to participate in a substance-abuse evaluation.

[6] Soon after D.F. was released into his grandmother's care, D.F.'s grandmother notified Henry County Community Corrections that sometime on the night of June 23 or early on June 24, D.F. cut off his ankle bracelet and ran away from home. On June 26, the juvenile court held a detention hearing. At that time, the State recommended that D.F. undergo a complete substance-abuse assessment at the DOC. D.F. agreed with the State's recommendation. Accordingly, the court ordered D.F. to complete that assessment.

[7] On August 21, D.F.'s probation officer filed a predispositional report. D.F. admitted that he had used alcohol, marijuana, and methamphetamine on a

daily basis. He also admitted that he had used prescription pills, including Klonopin, benzodiazepine, and opiates, one or two times per month beginning at the age of fourteen. The probation officer recommended that D.F. be placed in a residential placement center. A psychological evaluation conducted by the DOC indicated that D.F. had issues with substance abuse and criminal behavior. The report further indicated that D.F. admitted that he had previously carried a handgun and that he is a member of a gang. The psychological report also recommended that D.F. be placed in a residential facility. On August 24, the juvenile court placed D.F. in a residential placement program at the Anderson Center. Within a few weeks of his placement there, D.F. unsuccessfully attempted to escape from the facility. However, the Anderson Center allowed D.F. to remain there.

[8]    On December 10, while on a home pass from the Anderson Center, D.F. took a Suboxone pill from a prescription bottle belonging to his father. D.F. ingested part of the pill while on leave and took the other part of the pill with him back to the Anderson Center. At some point thereafter, the Anderson Center discovered that D.F. was writing letters to a female resident that contained "highly descriptive sexual content" and were "borderline predatory in nature." Appellant's App. Vol. II at 159. The letters also included notes that highlighted gang affiliation. The Anderson Center employees were concerned that they could not meet D.F.'s needs, and they had concerns for the safety of the other residents at the Anderson Center. D.F. did not handle the consequences of his actions well, and he asked to be removed from the program.

[9] On February 8, 2018, the State filed a petition for emergency change of residence based on D.F.'s use of Suboxone while on leave, D.F.'s letters to the female resident, D.F.'s request to be removed, and the Anderson Center's concerns for the safety of other individuals. On February 15, the juvenile court held a hearing on the State's petition. During the hearing, D.F.'s probation officer testified that both she and D.F.'s therapist believed that the DOC "would be the most suitable facility for him" based on D.F.'s past behavior because the DOC has extensive juvenile programming and D.F. would be able to complete a program that is best suited to his needs. Tr. Vol. II at 52. At the conclusion of the hearing, the court found that placement in the DOC was D.F.'s best chance for making the necessary changes to his behavior before he becomes an adult. Accordingly, the juvenile court modified D.F.'s placement and awarded wardship of D.F. to the DOC. This appeal ensued.

## Discussion and Decision

[10] D.F. contends that the juvenile court abused its discretion when it modified its dispositional order and committed him to the DOC because there were "a number of less restrictive settings" available to D.F., including foster care and placement at a quasi-military training academy. [2] Appellant's Br. at 18. It is well settled that:

---

[2] D.F. also briefly asserts that the "juvenile court did not attempt a less restrictive, more family like setting before placing D.F. in the D.O.C." Id. at 15. But D.F. is incorrect. The juvenile court first placed D.F. on home detention with electronic monitoring and allowed him to live at home with his grandmother. When

> The choice of a specific disposition of a juvenile adjudicated a delinquent child is within the sound discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition. We will not reverse a juvenile disposition absent a showing of an abuse of discretion. An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.

*D.S. v. State*, 928 N.E.2d 1081, 1084 (Ind. Ct. App. 2005) (internal citations and quotation marks omitted).

[11] The goal of the juvenile process is rehabilitation rather than punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). "Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences." *Id*. Indiana Code Section 31-37-18-6(1)(A) provides that "[i]f consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that . . . is in the least restrictive (most family like) and most appropriate setting available[.]"

[12] But, as this court has previously held:

> Although less harsh options than commitment to an institution are available for the juvenile court to utilize, "there are times

---

that failed, the court placed D.F. in a residential placement facility where he was allowed to visit his family at his home.

when commitment to a suitable public institution is in the 'best interest' of the juvenile and of society." *S.C. v. State*, 779 N.E.2d 937, 940 (Ind. Ct. App. 2002), *trans. denied* (quoting *A.D. v. State*, 736 N.E.2d 1274, 1278 (Ind. Ct. App. 2000)). Stated differently, the law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *See* Ind. Code § 31-37-18-6.

*D.S.*, 829 N.E.2d at 1085.

[13] Here, we cannot say that the juvenile court abused its discretion when it placed D.F. in the DOC instead of with yet another less restrictive option. D.F. originally agreed to an informal adjustment after he had been arrested for breaking into two different vehicles. But only days after he agreed to that informal adjustment, D.F. committed battery, as a Class A misdemeanor when committed by an adult. As a result of the second arrest, the juvenile court adjudicated D.F. a delinquent child and placed him on home detention with electronic monitoring. But, again, within only one day of being placed with his grandmother, D.F. cut off his ankle bracelet and ran away. The juvenile court then placed D.F. in a residential facility, and D.F. unsuccessfully attempted to escape after only a few weeks. And later while on leave from the residential facility, D.F. took drugs, and he brought drugs back with him to the center. D.F. then began writing sexually explicit and "borderline predatory" letters, which caused the Anderson Center to no longer believe that they could maintain the safety of the other residents. Appellant's App. Vol. II at 159.

[14] The juvenile court gave D.F. multiple chances to change his behavior before it modified his placement to the DOC. But, despite those chances, D.F. continued to engage in illegal or inappropriate conduct. Based on D.F.'s recurring inappropriate conduct while in less restrictive settings and the probation officer's belief that placing D.F. in the DOC would give him the best opportunity for rehabilitation, we cannot say that the juvenile court abused its discretion when it placed D.F. in the DOC. We affirm the juvenile court's order.

[15] Affirmed.

Crone, J., and Pyle, J., concur.