## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 10 2018, 11:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Arturo Rodriguez II
Rodriguez Law, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| P.P.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | October 10, 2018<br><br>Court of Appeals Case No.<br>18A-JV-867<br><br>Appeal from the Clinton Circuit Court<br><br>The Honorable Bradley K. Mohler, Judge<br><br>Trial Court Cause Nos.<br>12C01-1801-JD-8<br>12C01-1803-JD-96 |

**Barteau, Senior Judge.**

# Statement of the Case

P.P. appeals the juvenile court's dispositional order. We affirm.

# Issue

P.P. presents one issue for our review, which we restate as: whether the juvenile court abused its discretion by awarding wardship of P.P. to the Department of Correction (DOC).

# Facts and Procedural History

On January 16, 2018, the State filed a delinquency petition in cause number 12C01-1801-JD-8 (JD-8) alleging that P.P. had committed the offenses of theft of a firearm, a Level 6 felony if committed by an adult,[1] four counts of unauthorized entry of a motor vehicle, all Class B misdemeanors if committed by an adult,[2] and three counts of theft, all Class A misdemeanors if committed by an adult.[3] The following day, P.P. admitted to the allegations. The juvenile court entered a true finding to the charge of theft of a firearm as a Level 6 felony and placed P.P. on supervised probation for twelve months and on home detention for ninety days. While on home detention, P.P. was only allowed to go to probation appointments, community correction appointments,

---

[1] Ind. Code § 35-43-4-2 (2017).

[2] Ind. Code § 35-43-4-2.7(d) (2014).

[3] Ind. Code § 35-43-4-2.

counseling, work, school, church, and doctor appointments without prior approval of the probation department. Specific conditions of P.P.'s probation included attendance of weekly probation appointments, completion of seventy-five hours of community service at a not-for-profit agency, attendance and participation in moral reconation therapy, individual counseling and group counseling, drug screens, curfew of 8:00 p.m., no contact with J.M., gang members or anyone on probation, attendance at school with no problems and maintenance of passing grades, no possession or use of any weapons, and payment of fees and restitution.

[4] On February 6, 2018, the State filed a petition alleging that P.P. had violated the terms of his supervision by cutting off his house arrest monitor, taking unauthorized leave at 3:12 a.m., and failing to pay fees and restitution. On March 15, 2018, the State filed an amended petition alleging all of the violations contained in the February 6 petition and adding further violations of taking additional unauthorized leave, testing positive for THC and Benzodiazepines, committing the offense of escape by removing his ankle monitor and leaving his residence on March 14, and snorting pills. This petition was soon followed by a second amended petition filed on March 19 alleging, in addition to all of the prior allegations, that P.P. had violated the terms of his supervision again by cutting off his ankle bracelet and leaving his residence, thereby committing the offense of escape on March 17. P.P.'s commission of the offense of escape on March 14, also resulted in the filing of

an additional delinquency petition under cause number 12C01-1803-JD-96 (JD-96).

[5] At a hearing on these matters, P.P. admitted to committing the offense of escape and to violating his probation based on the escape and the unauthorized leaves. The juvenile court awarded wardship of P.P. to the Indiana Boys' School in the DOC. P.P. now appeals.

## Discussion and Decision

[6] P.P. contends the juvenile court abused its discretion when it awarded guardianship of him to the DOC because less restrictive options were available. Specifically, P.P. argues that he should have been continued on home detention and given "more counseling."[4] Appellant's Br. p. 12.

[7] The choice of the specific disposition of a juvenile adjudicated to be delinquent is a matter within the sound discretion of the juvenile court. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). This discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the

---

[4] P.P. additionally claims that the trial court erred by failing to show "how the safety of the community was at risk." Appellant's Br. p. 11. We note the statute is not written to require such a showing; rather, the statute provides that the juvenile is required to be placed in the least restrictive setting **only if** it is consistent with the safety of the community **and** the best interest of the child. *See K.A. v. State*, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002) (quoting Ind. Code § 31-37-18-6), *trans. denied*. The statute is written in the conjunctive; therefore, both factors must be satisfied in order to place a juvenile in the least restrictive setting. However, the converse is not true—one need not show the absence of both factors to place a juvenile in a more restrictive setting. Thus, as is the situation in this case, negating just one of the factors is sufficient to place the juvenile in a more restrictive setting.

policy of favoring the least harsh disposition. *Id.* We will reverse a juvenile disposition only for an abuse of discretion, which occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual inferences drawn therefrom. *Id.* Accordingly, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id.*

[8]     Indiana Code section 31-37-18-6 (1997) sets forth the following factors a juvenile court must consider when entering a dispositional decree:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Although this section requires the juvenile court to select the least restrictive placement, that requirement is limited by the safety of the community and the best interest of the child. *D.B. v. State*, 842 N.E.2d 399, 405 (Ind. Ct. App. 2006). Thus, the statute recognizes that, in certain situations, the best interest of the child is better served by a more restrictive placement. *Id.* at 406.

[9] Here, before being committed to the DOC, P.P. was given the chance to conform his behavior, but he squandered that opportunity. After admitting to what would have been a Level 6 felony theft of a firearm and dismissal of seven other charges in JD-8, P.P. was placed on home detention for ninety days and supervised probation for twelve months. The court presented P.P. with some incentive to alter the wayward path he was on by providing that his probation could be shortened or modified to unsupervised, depending on his compliance, and ordered him to attend counseling. In addition, in its disposition order the court warned P.P. that any new charges may result in his placement at the DOC.

[10] Following the court's disposition order of January 17, P.P. was placed on probation and home detention. Scarcely more than a week later, on January 26, P.P. cut off his home detention bracelet. Three days later, without authorization to do so, he left his residence at 3:12 a.m. Again, on March 10, P.P. left his residence without authorization, and, three days later, he tested positive for THC and Benzodiazepines. The following day, on March 14, he

committed the offense of escape by removing his home detention bracelet and leaving his residence. On this occasion, P.P.'s father advised the probation department that he caught P.P. snorting pills, and then P.P. left the residence. When found and returned home, P.P. stated that "life is unfair." Appellant's App. Vol. II, p. 52. Just three days later, P.P. again committed the offense of escape by cutting off his home detention bracelet and leaving his residence.

[11] In announcing its decision, the juvenile court observed that P.P. "did well for a little bit and then kinda got spiraling out of control again." Tr. p. 14. The court pointed out that P.P.'s offenses are felonies, for which P.P. can be sent to adult court and which will hinder him in obtaining a job and other opportunities. The court explained that the purpose of juvenile court is to help P.P. "get back on track and make good decisions before [he] become[s] an adult." *Id.* The court further stated that it "would love to put [P.P.] back on home detention" but that it did not believe that was in P.P.'s best interest because "it wasn't sinking into [sic] [him]." *Id.* at 14-15. In placing P.P. at the DOC, the court explained that the length of the wardship was largely dependent on P.P.'s progress, behavior, and attitude. The court also told P.P., "You know, ultimately we want you back out cause we want you in the community with your family." *Id.* at 15.

[12] The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his or her behavior so that he or she will not later become a criminal. *S.C. v. State*, 779 N.E.2d 937, 940 (Ind. Ct. App. 2002), *trans. denied*. Moreover, as noted, by its terms Indiana Code section 31-37-18-6 recognizes that while

less restrictive placement options may be available, in certain situations a less restrictive placement is not consistent with the best interest of the child. P.P. was sixteen at the time of disposition and clearly in need of rehabilitation while still a juvenile and before his delinquent conduct becomes criminal, especially given that these adjudications involved felony charges. P.P.'s continuing behavior during the short time he was on probation and home detention, especially after a seemingly compliant period, indicated that he is unable or unwilling to abide by less restrictive options and placed successful rehabilitation in serious jeopardy. Thus, given the nature of these offenses, P.P.'s inability to abide by the rules, and the court's thoughtful consideration of its options, this is a situation in which commitment to a less restrictive environment than DOC is not in the best interest of P.P. or of the community.

## Conclusion

For the foregoing reasons, we conclude the juvenile court did not abuse its discretion in committing P.P. to the DOC.

Affirmed.

Crone, J., and Brown, J., concur.